**Eleanor A. THAYER, et al.**

v.

**JACKSON BROOK INSTITUTE, INC.**

Supreme Judicial Court of Maine.

Argued Oct. 30, 1990.

Decided Jan. 3, 1991.

Ricky L. Brunette (orally), Brunette, Shumway & Ryer, Portland, for plaintiff.

Elizabeth Olivier and Michael Messerschmidt (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

ROBERTS, Justice.

Eleanor A. Thayer and Robert Thayer appeal a summary judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*) in favor of the defendant, Jackson Brook Institute (JBI) on the Thayers' negligence claim, that resulted from an assault on Mrs. Thayer by a patient while she was visiting JBI. Because we reject the Thayers' contention that their case did not arise from patient care, we affirm the judgment based on the statute of limitation of the Maine Health Security Act, 24 M.R. S.A. §§ 2501–2961 (1990).

I.

On August 13, 1985, the Thayers were visiting their son, then a patient at JBI. The visit took place inside one of the locked units. Each unit was composed of two open living areas, two smaller living rooms and a number of patient rooms housing about thirty patients. At the time, many in the unit, including most of the staff, were at dinner. Upon arriving in her son's room, Mrs. Thayer noticed a young woman putting her clothes into her son's dresser. Not wanting to upset the woman or her son, Mrs. Thayer went over to the nursing station and mentioned what she had seen. The staff person on duty responded, "oh, my goodness, is that where she is, we've been looking for her."

Later, as the Thayers were getting ready to leave, the same young female patient approached her and suddenly began to beat and choke her. Mrs. Thayer's screams drew the attention of some of the staff who subdued the patient. Mrs. Thayer suffered bruises, chipped teeth and emotional distress as a result of the encounter.

In the days preceding the incident, doctors treating Mrs. Thayer's attacker had ordered her to be under "constant observation" by a staff member due to several recent episodes of assaultive behavior. Under JBI's policy guidelines, "constant observation" meant that "the staff member assigned should always be able to see the patient and not be more than six steps from [the patient]." Dorothy Goodwin, head nurse at JBI, testified on deposition that the only person able to change the status of the patient was a registered nurse and this responsibility "generally"

permitted only a tightening of the patient's restrictions.

During the dinner period, Leslie Gatcombe–Hanes was in charge of the unit and was one of only two nurses assigned to the unit. The patient who assaulted Mrs. Thayer was, at this time, supposed to be under "constant observation" by Gatcombe–Hanes. In her affidavit submitted along with the motion for summary judgment, Gatcombe–Hanes stated:

> Because I was aware of the 'restrictions' which had been placed upon the patient were somewhat loose, because I had not noticed any particular problems or concerns with this patient, and because there was no one in the living area with the patient at the time, I determined it would be proper to let her out of my sight for a short period of time it would take me to conduct the fifteen minute checks. I did, however, place a call requesting additional help. Furthermore, at the time I commenced these checks this patient was in the living area located approximately twenty feet from a desk in front of the nursing station. The occupational therapist was sitting at this desk, and therefore, this patient was within her sight.

The head nurse, Dorothy Goodwin, testified that these actions of Gatcombe–Hanes were fully within her approved range of discretion.

## II.

Former 24 M.R.S.A. § 2902, in effect both on the date of the injury and on the date of the complaint,[1] stated, in relevant part, that "an action for damages for injury ... against ... any hospital or its employee whether based on tort or breach of contract or otherwise, *arising out of patient care,* shall be commenced within two years after the cause of action accrues." (emphasis added). The Thayers claim that the court erred in holding that their claim arises "out of patient care" so as to bring it within the ambit of section 2902. According to the Thayers, the thrust of their claim is that JBI was guilty of failing to keep the premises in a condition reasonably safe for those who visited. This claim, they argue, is one of premises liability rather than professional negligence and should be governed by 14 M.R.S.A. § 752, which contains a six year statute of limitation. We disagree.

Contact with nonpatients was an essential part of JBI's program of psychiatric care. This program allowed patients to interact with nonpatients to the extent those treating them believed beneficial for the patient and safe for nonpatients. Although the Thayers have worded their complaint to allege a failure to "exercise reasonable and ordinary care to keep and maintain the premises in a reasonably safe condition," the essence of the duty allegedly breached by JBI derived from professional decisions of JBI's staff.

The decision to allow contact between the assailant and visitors was based, in part, on JBI's philosophy of psychiatric care and, in part, on the staff's determination of the assailant's ability safely and beneficially to interact with persons from outside the institution. JBI's alleged negligence thus cannot be divorced from the program of care this patient was receiving. If JBI had a duty to protect Mrs. Thayer while she was visiting its premises, that duty was executed by those who evaluated the patients and prescribed their relative freedom to interact with visitors. In this case the decision to allow both supervised and unsupervised contact with outsiders was made by persons who were caring for the assailant. Because this was a decision "arising out of patient care" the court did not err in finding this action barred by section 2902's statute of limitations.[2]

---

1. The former version of section 2902 was enacted by P.L.1977, ch. 492 and was repealed by P.L.1985, ch. 804, effective August 1, 1988.

2. Although the Superior Court found *Hewett v. Kennebec Valley Mental Health Association,* 557 A.2d 622 (Me.1989), controlling, we decide this case solely on the language of 24 M.R.S.A. § 2902, which created a two year statute of limitation for all actions "arising out of patient care." *Hewett* relied on 14 M.R.S.A. § 753 which prescribed a two year statute of limitation for "malpractice of physicians and all oth-

The entry is:
Judgment affirmed.

All concurring.

ers engaged in the healing art." We do not find

that statute relevant to the case at bar.