1998 ME 147

**Walter K. BUTLER, III**

v.

**Paul J. KILLORAN, M.D.; Pen–Bay X–Ray Associates; and Penobscot Bay Medical Center.**

Supreme Judicial Court of Maine.

Argued Dec. 2, 1997.
Decided June 15, 1998.

David D. Gregory (orally), John A. McArdle, III, Campbell & McArdle, P.A., Portland, for plaintiff.

David L. Herzer, Jr. (orally), David C. Norman, Norman, Hanson & DeTroy, Portland, for Killoran and Pen–Bay X–Ray Assoc.

Carrie A. Green (orally), Daniel Rapaport, Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for Penobscot Bay Med. Ctr.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1]  Walter K. Butler, III, the personal representative of the estate of Martha Butler, appeals from the judgment entered in the Superior Court (Cumberland County, *Calkins, J.*) granting the Defendants' motions for a summary judgment on Butler's notice of claim for wrongful death arising from medical malpractice.  Butler argues that the court·erred by applying the three-year statute of limitations for professional negligence pursuant to the Health Security Act, 24 M.R.S.A. §§ 2501–2985 (1990 & Pamph.1997) to determine that his cause of action was time-barred, and that the court should have applied the two-year statute of limitations pursuant to Maine's Wrongful Death Act, 18–A M.R.S.A. § 2–804 (1998), to find that his cause of action was timely.  We affirm the judgment.

I.

[¶ 2]  On September 18, 1996, Walter K. Butler, III, the personal representative of the estate of Martha Butler, filed a notice of claim [1] against Paul Killoran, M.D., Pen–Bay X–Ray Associates, and Penobscot Bay Medical Center seeking relief pursuant to 18–A M.R.S.A. § 2–804, Maine's wrongful death statute.  In pertinent part, the notice of claim alleged that on August 7, 1992, the Defendants caused an MRI to be performed on Martha's brain;  that they negligently failed to detect on the MRI film an otherwise treatable brain aneurysm;  and that the aneurysm burst on October 8, 1994, resulting in

---

1.  Maine's Health Security Act provides, *inter alia,* that plaintiffs must serve and file a notice of claim before commencing an action for professional negligence against health care providers, health care practitioners, or any agent or employee acting within the scope of their authority. *See* 24 M.R.S.A. §§ 2853, 2903 (1990 & Pamph. 1997).

Martha's death two days later on October 10, 1994.

[¶ 3] The Defendants filed motions for a summary judgment, arguing that the Health Security Act's three year limitations period, running from the date of the Defendants' alleged negligence in 1992, had expired before Butler commenced his cause of action in 1996.[2] Butler opposed the motions, arguing that the Wrongful Death Act's two-year limitations period, running from the date of Martha's death in 1994, controlled his cause of action. The court granted a summary judgment to the Defendants, finding that Butler's cause of action was time-barred by the three-year statute of limitations for professional negligence claims pursuant to section 2902 of the Health Security Act, 24 M.R.S.A. §§ 2501–2985. This appeal followed.

## II.

[¶ 4] The issue before us is whether a cause of action for wrongful death arising from professional negligence must be commenced within the statute of limitations set forth in Maine's Wrongful Death Act (WDA), 18–A M.R.S.A. § 2–804,[3] or within the statute of limitations set forth in the Health Security Act (HSA), 24 M.R.S.A. § 2902. Pursuant to the WDA, a plaintiff must commence the action for wrongful death within two years after the decedent's death. *See* 18–A M.R.S.A. § 2–804(b). Thus, if the WDA's statute of limitations is applied to Butler's claim, his cause of action is timely. Pursuant to the HSA, however, "actions for professional negligence" must be commenced within three years after the cause of action

accrues. *See* 24 M.R.S.A. § 2902. An "action for professional negligence" is defined in section 2502 as

> any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services.

*Id.* § 2502(6). For the purposes of section 2902, a cause of action accrues on the date of the act or omission giving rise to the injury. *See id.* § 2902. Thus, if the HSA's three-year limitations period is applied to Butler's claim, his cause of action is time-barred.

[¶ 5] In reviewing the grant of a motion for a summary judgment, we examine the evidence in a light most favorable to the nonprevailing party to determine whether the court committed an error of law. *See Community Telecommunications Corp. v. State Tax Assessor*, 684 A.2d 424, 426 (Me. 1996) (citing *Enerquin Air, Inc. v. State Tax Assessor*, 670 A.2d 926, 928 (Me.1996)). The meaning and construction of statutory language presents a question of law. *See id.*

[¶ 6] We begin by examining the language of section 2502's definition of an "action for professional negligence" to determine whether the Legislature intended that phrase to encompass actions for wrongful death arising from professional negligence. *See Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979) (in seeking to determine legislative intent, we must look first to the language of the statute itself). Section 2502's broad language, particularly its inclusion of the words

2. Given that the Defendants' alleged negligence occurred in August 1992 and Martha died in October 1994, Butler had approximately ten months (October 1994 until August 1995) to commence his wrongful death action within the HSA's statute of limitations.

3. Maine's wrongful death act provides in pertinent part:

> (a) Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person or the corporation that would have been liable if death had not ensued shall be

> liable for damages as provided in this section, notwithstanding the death of the person injured....

18–A M.R.S.A. § 2–804. Maine's wrongful death act, which has existed in various forms since 1891, is currently set forth at 18–A M.R.S.A. § 2–804 as part of the Maine Probate Code. *See* P.L.1979, ch. 540 (effective Jan. 1, 1981). Section 2–804's predecessor, which also had a two-year statute of limitations, was set forth at the former 18 M.R.S.A. §§ 2551–2553. In conjunction with the Legislature's adoption of the Maine Probate Code in 1981, the former sections 2551–2553 were repealed and re-enacted (in similar form) as the current section 2–804.

"or death" and "or otherwise," provides strong evidence of the Legislature's intention that the HSA fully occupy the field of claims brought against health care providers and practitioners "for damages for injury or death ... arising out of the provision or failure to provide health care services." 24 M.R.S.A. § 2502(6); *see Dutil v. Burns,* 674 A.2d 910, 911 (Me.1996); *Musk v. Nelson,* 647 A.2d 1198, 1201 (Me.1994). Indeed, we have previously recognized the broad scope of section 2502's definition of an action for professional negligence, and have found the HSA's procedural requirements and limitations period to be applicable in a wide variety of contexts.[4] *See, e.g., Brand v. Seider,* 1997 ME 176, 697 A.2d 846 (patient's claim against psychologist for breach of confidentiality is subject to HSA's procedural requirements); *Dutil,* 674 A.2d 910 (strict liability and breach of warranty claims brought against health care providers are subject to the HSA's procedural requirements and limitations period), *Musk,* 647 A.2d 1198 (claim for failed sterilization is subject to HSA's limitations period); *Thayer v. Jackson Brook Inst.,* 584 A.2d 653 (Me.1991) (claim brought by plaintiff who was attacked while visiting patient care facility is subject to HSA's limitations period).[5]

[¶ 7] Despite the breadth of section 2502's definition of an "action for professional negligence" subject to the provisions of the HSA, Butler argues for the limited applicability of the HSA's statute of limitations in the context of actions for wrongful death arising from professional negligence. Specifically, he contends that the HSA's statute of limitations is applicable only for the narrow purpose of determining whether the decedent had an unexpired cause of action for professional negligence at the time of her death,

which is a necessary precondition to a personal representative's subsequent wrongful death action. *See Ogden v. Berry,* 572 A.2d 1082, 1083 (Me.1990) (where decedent's cause of action for professional negligence had expired before his death, personal representative had no cause of action for wrongful death). If that precondition is met, he argues, an independent cause of action for wrongful death arises in the personal representative, controlled exclusively by the WDA's limitation period.

[¶ 8] To support his theory of the limited applicability of section 2902, Butler invokes the principle of statutory construction that a court should not read a statute to conflict with another when an alternative, reasonable interpretation yields harmony. *See Pinkham v. Morrill,* 622 A.2d 90, 95 (Me.1993). A ruling that the HSA's limitations period applies only to the threshold question of whether the decedent possessed a timely cause of action for professional negligence at the time of her death would give meaning to both the HSA's and the WDA's limitations periods in the context of an action for wrongful death arising from professional negligence.

■ [¶ 9] The principle of "harmonious" statutory construction cannot contravene the intent of the Legislature in adopting one of the statutes that creates the conflict. *See Soucy v. Board of Trustees of Maine State Retirement System,* 456 A.2d 1279, 1281 (Me. 1983) (fundamental rules of statutory construction prohibit interpreting statute in manner inconsistent with legislative intent). The legislative history of the HSA is well documented. In response to an alleged national crisis in the availability and cost of medical malpractice insurance, the Legisla-

---

4. In determining whether an action is governed by the HSA, we have distinguished between actions for damages, *see, e.g., Brand,* 1997 ME 176, 697 A.2d 846; *Dutil,* 674 A.2d 910; *Musk,* 647 A.2d 1198; *Thayer,* 584 A.2d 653, and actions in equity. In *St. Paul Ins. Co. v. Hayes,* 676 A.2d 510 (Me.1996), the plaintiffs brought an action for contribution against a physician after they settled malpractice claims that had been brought against them. *See id.* at 511. Because the HSA defines an "action for professional negligence" subject to its provisions in part as an "action for damages," the plaintiffs' equitable claim for con-

tribution was not controlled by the HSA. *See id.* at 512; *accord Brown v. Augusta Sch. Dep't,* 963 F.Supp. 39 (D.Me.1997) (plaintiff's claim for contribution is not an action for damages and is not governed by the HSA).

5. We note that Butler does not seem to dispute that actions for wrongful death arising from professional negligence fall within the general purview of the HSA, as evidenced by his compliance with the HSA's procedural requirements.

ture created in 1975 the Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance, an entity more commonly known as the Pomeroy Commission. The Commission was charged with the task of preparing "a proposal to insure the availability of medical and hospital malpractice insurance ... and to develop a more equitable system of relief for malpractice claims." *See* P. & S.L.1975, ch. 73, § 1. In its final report to the Legislature, the Commission confirmed that malpractice insurance rates in Maine had escalated in recent years, and it proposed comprehensive tort reform within the health care industry designed to stem rising malpractice insurance costs and ensure the continued availability of malpractice insurance to Maine health care providers and practitioners. *See Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance,* Report to the 108th Legislature xv–xxiii (Jan. 22, 1977). The Commission's recommendations, including a proposal to shorten the statute of limitations for actions arising out of patient care, formed the basis of the Health Security Act, which was enacted in 1977 and amended in 1985.[6] *See* P.L.1977, ch. 492; P.L.1985, ch. 804.

[¶ 10] The application of the WDA's statute of limitations to wrongful death actions arising from professional negligence could extend health care providers' and practitioners' potential exposure to litigation to nearly five years after the date of the alleged negligence,[7] a result which is contrary to the Legislature's decision to shorten the statute of limitations for actions arising from professional negligence. The Legislature's concerns about the affordability and availability of medical malpractice insurance are implicated by *all* actions involving medical malpractice, irrespective of whether the malpractice resulted in injury or in death, and irrespective of whether the action is brought on behalf of a decedent or on behalf of a decedent's heirs.[8]

[¶ 11] We are also mindful of the principle of statutory construction that a statute dealing with a subject specifically prevails over another statute dealing with the same subject generally. *See* 2B SUTHERLAND, STATUTORY CONSTRUCTION § 51.05, at 174 (1992 & Supp.1998) ("Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any

**6.** The Commission's package of proposed reforms included a recommendation to shorten the statute of limitations in "actions for injury or death against any hospital or its employee, whether based on tort or breach of contract, or otherwise, arising out of patient care" to two years from the date the cause of action accrued. *See Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance,* Report to the 108th Legislature, at 30. This recommendation was incorporated in section 2902. *See* P.L.1977, ch. 492, § 3. In 1985 the Legislature repealed and replaced section 2902 with two notable changes: first, the period of limitations was extended from two to three years; and second, the statute of limitations was made applicable to "actions for professional negligence." *See* P.L.1985, ch. 804, § 13. Section 2502, in turn, was amended to include the present definition of "an action for professional negligence." *See id.* § 5 (codified at 24 M.R.S.A. § 2502(6)).

**7.** Although it is possible to envision a scenario in which the application of the WDA's limitations period to an action for wrongful death arising from professional negligence would shorten a tortfeasor's period of exposure to litigation, it is equally possible to envision a scenario in which such application would lengthen a tortfeasor's period of exposure to litigation. If a patient died immediately after being subjected to the tortfea-

sor's professional negligence, application of the WDA's limitations period would shorten the tortfeasor's total period of exposure to litigation to just two years, as opposed to three years if the HSA's limitations period were applied. (As noted in footnote 6, the original statute of limitations in the HSA was only two years, meaning that the two year limitations period of the WDA would not have the effect of shortening that limitations period.) If, however, a patient died two years and 364 days after the tortfeasor's professional negligence, application of the WDA's limitations period would lengthen the tortfeasor's total period of exposure to litigation to nearly five years.

**8.** Thus, we find unpersuasive Butler's contention that section 2502's reference to "any action for damages for ... death" pertains only to survival actions for professional negligence brought on behalf of the decedent, *see* 18–A M.R.S.A. § 3–817 (1998), as distinguished from a wrongful death action brought on the plaintiff's own behalf. That narrow reading of "or death" is driven by Butler's general insistence that the HSA must be read narrowly to avoid any conflict with the HSA. As indicated, we disagree with that premise.

conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling."); *see, e.g., South Portland Civil Service Comm'n v. City of South Portland,* 667 A.2d 599, 601 (Me.1995); *Swan v. Sohio Oil Co.,* 618 A.2d 214, 219 (Me.1992); *State v. Anderson,* 409 A.2d 1290, 1304–1305 (Me. 1979). Pursuant to this principle, the WDA's general provisions creating a cause of action for wrongful death arising from a "wrongful act, neglect, or default" must yield to the HSA's more specific provisions, which pertain only to claims arising from professional negligence by health care providers and practitioners. *See, e.g., Jensen v. IHC Hospitals, Inc.,* 944 P.2d 327, 331 (Utah 1997) (applying medical malpractice statute of limitations to action for wrongful death arising from medical malpractice, based partly on fact that the medical malpractice statute "is more specific than the general wrongful death statute of limitations, applying as it does only to wrongful death actions arising out of medical malpractice").

[¶ 12] In summary, the broad language of section 2502, the legislative history surrounding its enactment, and the specificity of the subject matter of the HSA persuade us that the Legislature intended section 2502 to mean exactly what it says: that an action for professional negligence is "any action for damages for injury or death ... arising out of the provision or failure to provide health care services." Butler has filed such an action. That action is subject to the HSA's limitations period. *See* 24 M.R.S.A. §§ 2502, 2902.[9]

The entry is:

Judgment affirmed.

---

9. Butler also argues that the application of the HSA's limitations period to his cause of action violates his due process and equal protection rights. Butler did not raise these arguments in the trial court. As a general rule, a party who has failed to preserve an issue in the trial court may not use that issue to attack the judgment at the appellate level. *See Teel v. Colson,* 396 A.2d 529, 533 (Me.1979). This principle is controlling even with respect to alleged constitutional violations. *See id.* It is only when exceptional circumstances exist whereby "application of the general rule.... would obviously result in a plain miscarriage of justice" that we will review unpreserved constitutional issues. *Id.* at 534. We find no such exceptional circumstances in this case.