STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-07-442
                                                        TDW - CuM - 2/8/2008


BARBARA TURNER,

        Plaintiff,

        v.                              §              ORDER

DISCOVERY HOUSE OF
CENTRAL MAINE INC.,                                    DONALD L. GARBRECH
                                                           LAW LIBRARY

        Defendant.
                                                       FEB 15 2008

Before the court is defendant Discovery House's motion to dismiss the complaint

for failure to comply with the Maine Health Security Act, 24 M.R.S. §§ 2501-2987.

Plaintiff Barbara Turner alleges that she was an outpatient at a methadone clinic

in South Portland, Maine operated by Discovery House. On December 29, 2006, Turner

gave a urine sample that was refused by a male nurse at Discovery House who had

observed Turner giving the urine sample by way of a remote camera. According to

Turner, the male nurse was verbally abusive toward her. She objected to a male nurse

watching her give the sample and requested that a female nurse observe instead. The

male nurse refused this request and watched as Turner gave a second urine sample.

According to Turner, the use of a remote camera and the observation by a nurse of a

different gender violated applicable DHS rules.

On August 27, 2007 Turner filed this instant complaint alleging negligence and

invasion of privacy against Discovery House for the male nurse's actions regarding the

urine samples. Discovery House contends that the complaint must be dismissed

because Turner failed to comply with the Maine Health Security Act before filing her

complaint.

DISCUSSION

In pertinent part, the Maine Health Security Act (MSHA) provides that "[n]o action for professional negligence may be commenced until the plaintiff has served and filed a written notice of claim in accordance with [24 M.R.S.] Section 2853; complied with [the screening panel process set forth in 24 M.R.S. §§ 2851-59]; and determined that the time periods provided in section 2859 have expired." 24 M.R.S. § 2903(1)(A)-(C). The statute defines an "action for professional negligence" as "any action for damages for injury or death against any health care provider, its agents or employees, or health care practioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. § 2502(6). Turner concededly has not complied with the screening panel process.

The Law Court has taken an expansive view of the scope of the Health Security Act, stating that "[t]he broad statutory definition, including the term 'or otherwise,' reveals the legislature's intention that the MHSA fully occupy the field of claims brought against health care providers." *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996) citing *Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994). One example of a case applying this rule is *Saunders v. Tisher*, 2006 ME 94, 902 A.2d 830. *Saunders* involved a patient's suit against his former psychiatrist based on the doctor's actions in having the patient involuntarily admitted to a mental hospital. *Saunders*, 2006 ME 94 ¶ 10, 902 A.2d at 833. In that case, the patient brought suit for violations of the Maine Civil Rights Act, intentional infliction of emotional distress, and negligent infliction of emotional distress and argued that these claims were not subject to the procedural requirements of the MSHA. *Id.* ¶ 5, ¶ 8, 902 A.2d at 832.

In analyzing whether the MSHA applied in *Saunders*, the Law Court recognized that "the intent of the Legislature in enacting the MSHA was to stem the tide of rising

2

malpractice costs, and thereby the cost of health care in general. To do so, the Legislature essentially made the MSHA applicable to <u>any</u> case that could implicate medical malpractice insurance." *Id.* ¶ 15, 920 A.2d at 834 (emphasis in original). Thus, "[a]lthough Saunders styles his complaint as one for a violation of his civil rights, because the actions of Dr. Tisher described in Saunder's complaint regard health care services, and implicate medical malpractice insurance, the complaint falls within and is subject to the provisions of the MSHA." *Id.* ¶ 15, 902 A.2d at 834-35.

The Law Court ruled similarly in *Thayer v. Jackson Brook Institute Inc.*, 584 A.2d 653 (Me. 1991), which involved a claim brought by the mother of a patient who was visiting her son when she was allegedly assaulted by another patient. The Law Court held that the visitor's claim was subject to the MSHA because it arose out of patient care, explaining:

> Contact with nonpatients was an essential part of JBI's program of psychiatric care. This program allowed patients to interact with nonpatients to the extent those treating them believed beneficial for the patient and safe for nonpatients. Although the Thayers have worded their complaint to allege a failure to "exercise reasonable and ordinary care to keep and maintain the premises in a reasonably safe condition," the essence of the duty allegedly breached by JBI derived from professional decisions of JBI's staff.

584 A.2d at 654.

Turner argues that the claims alleged in her complaint do not arise out of medical treatment rendered by Discovery House, but rather from the use of a remote camera by a male nurse to observe her providing a urinalysis, which does not involve medical treatment. Thus, according to Turner, the MSHA does not apply, and the motion to dismiss must be denied. The court disagrees.

Turner's cause of action in the instant case is subject to the Act because it arises out of patient care and is based on a professional decision of the Discovery House

3

nurse. The sole event giving rise to the counts alleged in the complaint is Turner's providing urine samples to a nurse on December 29, 2006. Turner admits that she was an outpatient at Discovery House on that day. She does not dispute that Discovery House is a "health care provider" as that term is defined in the MSHA.[1] While Turner argues that the use of a remote camera to observe her giving a urine sample "certainly does not involve any medical treatment," there is simply no reason Turner would have been giving a urine sample at Discovery House except in relation to medical treatment she was receiving there.

As with the actions of the doctor in *Saunders*, the actions by the male nurse in this case "although alleged to be improper and badly motivated, are nevertheless actions taken in connection with the provision of health care." *Saunders*, 2006 ME 94 ¶ 11, 902 A.2d at 833.

The entry shall be:

Defendant's motion to dismiss is granted without prejudice to plaintiff's ability to pursue a claim under the Maine Health Security Act. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     February __8__, 2008

Thomas D. Warren
Justice, Superior Court

---

[1] 24 M.R.S. § 2502(2) states: "'Health care provider' means any hospital, clinic, nursing home or other facility in which skilled nursing care or medical services are prescribed by or performed under the general direction of persons licensed to practice medicine, dentistry, podiatry, or surgery in this State and which is licensed or otherwise authorized by the laws of this State."

4

F COURTS
ınd County
lox 287
ne 04112-0287

GUY LORANGER ESQ
110 MAIN STREET SUITE 1520
SACO ME 04072



Plaintiff

)F COURTS
land County
Box 287
aine 04112-0287

ROBERT HATCH ESQ
PO BOX 4630
PORTLAND ME 04112



Defendant