STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-15-035

MERRILL WOODWORTH,
Personal Representative for the
ESTATE OF MERRILL P. ROBBINS,

Plaintiff

v.

DECISION AND ORDER

INHABITANTS OF THE TOWN
OF CUMBERLAND,

Defendant
and

6 JAN '15 * 11:48

TOWN OF CUMBERLAND,

Party-in-Interest

Before the court is a Rule 80B appeal filed by plaintiff Merrill Woodworth, as Personal Representative of the Estate of Merrill P. Robbins. Plaintiff challenges defendant Town of Cumberland's determination that a proposed beach facility is a Municipal Use. For the following reasons, the court affirms the decision of the Town of Cumberland Board of Adjustment and Appeals.

FACTS

The Town of Cumberland (Town) owns a 22.4-acre parcel of land located in Cumberland, Maine (Town property). (R. 3, 5.) The Town property is adjacent to plaintiff's property and is located in a Low Density Residential zoning district (LDR zone). (R. 5, 107.) On May 26, 2015, the Town submitted an application to the Cumberland Planning Board (Planning Board) for a permit to construct and operate a beach facility (facility) on the Town property. (R. 1-91.) Construction of the facility will

1

involve creation of a 33-space parking lot, with potential for an additional 11 spaces, and relocation of public access trails and a bathhouse (R. 9-10.)

On July 16, 2015, the Cumberland Code Enforcement Officer (CEO) submitted comments and stated that the facility is a Municipal Use, defined as "[a]ny use or building maintained by the Town of Cumberland." (R. 115, 235-36; Cumberland, Me., Zoning Ordinance § 315-4 (June 26, 2006).) Municipal Uses are permitted in the LDR zone. (R. 247; Cumberland, Me., Zoning Ordinance § 315-7 (June 26, 2006).) On July 21, 2015, the Planning Board granted approval for the facility as a Municipal Use. (R. 92.)

On July 30, 2015, plaintiff appealed to the Cumberland Board of Adjustment and Appeals (Board of Appeals). (R. 106-10.) Plaintiff argued that the facility is an Outdoor Recreational Facility, defined as a "place designed and equipped primarily for the conduct of nonmotorized outdoor sports, leisure-time activities, and other customary and usual recreational activities . . . .". (R. 106-09, 237; Cumberland, Me., Zoning Ordinance § 315-4 (June 26, 2006).) Outdoor Recreational Facilities are not permitted in the LDR zone. (R. 247-48; Cumberland, Me., Zoning Ordinance § 315-7 (June 26, 2006).)

The Board of Appeals held a public hearing on August 13, 2015. (R. 160.) The Board of Appeals determined that the definition of Municipal Use was unambiguous and allowed the CEO to classify "any" use maintained by the Town as a Municipal Use. (R. 162-63.) Because the Town will maintain the facility, the Board of Appeals affirmed the CEO's determination that the facility is a Municipal Use. (R. 163.)

PROCEDURAL HISTORY

Plaintiff appealed to this court on August 20, 2015, and alleged three causes of action: count I, Rule 80B review of the Board of Appeals' decision; count II, Rule 80B review of the Planning Board's decision; and count III, preliminary injunction. On August 28, 2015 plaintiff moved for a preliminary injunction to enjoin the Town from

2

constructing the facility. The court denied that motion on September 15, 2015. (Order on Pl.'s Mot. Prelim. Inj.) Plaintiff filed its Rule 80B brief on September 29, 2015. The Town filed an opposition to plaintiff's brief on October 28, 2015. Plaintiff filed a reply on November 12, 2015.

DISCUSSION

1. Standard of Review

When the Superior Court acts as an appellate court, it reviews the operative decision of the municipality for errors of law, abuse of discretion, or findings not supported in the record. Griffin v. Town of Dedham, 2002 ME 105, ¶ 6, 799 A.2d 1239. The parties do not dispute the description of the proposed facility; they dispute the interpretation of the ordinance. Interpretation of ordinance provisions is a question of law subject to de novo review. Isis Dev., LLC v. Town of Wells, 2003 ME 149, ¶ 3, 836 A.2d 1285; Jordan v. City of Ellsworth, 2003 ME 82, ¶ 9, 828 A.2d 768. In interpreting an ordinance, the court looks "first to the plain meaning of its language to give effect to the legislative intent, and if the meaning of the statute or ordinance is clear, [does] not look beyond the words themselves." Wister v. Town of Mt. Desert, 2009 ME 66, ¶ 17, 974 A.2d 903. The provisions are to be "construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." Roberts v. Town of Phippsburg, 642 A.2d 155, 156 (Me. 1994) (citation omitted).

2. Operative Decision

It is unclear whether the parties agree which decision is the "operative decision." The Town argues that the operative decision is the Board of Appeals' decision. (Def.'s Br. 4-5.) Although plaintiff does not dispute this in its reply, plaintiff seeks review of the decisions of the Board of Appeals and the Planning Board in the complaint. (Compl. ¶¶ 29-41.) The operative decision is the decision of the "tribunal of original jurisdiction"

that acts "as both fact finder and decision maker[.]" Peregrine Developers, LLC v. Town of Orono, 2004 ME 95, ¶ 9, 854 A.2d 216 (citations omitted). If the Board of Appeals acts as both fact finder and decision maker, the court reviews its decision. If the Board of Appeals acts only in an appellate capacity, the court reviews the Planning Board's decision. Stewart v. Town of Sedgwick, 2000 ME 157, ¶ 4, 757 A.2d 773. The Board of Appeals acts as both fact finder and decision maker unless the ordinance explicitly directs that it act only in an appellate capacity. See 30-A M.R.S. § 2691(3)(D) (2014) (requiring de novo review); Mills v. Town of Eliot, 2008 ME 134, ¶ 14, 955 A.2d 258.

The Town's ordinance grants the Board of Appeals the power to "determine whether the decisions of the Code Enforcement Officer are in conformity with the provisions of this chapter and interpret the meaning of this chapter in cases of uncertainty." (R. 253; Cumberland, Me., Zoning Ordinance § 315-77(B)(1) (June 26, 2006).) This language suggests that the Board of Appeals acts in an appellate capacity because the language directs the Board of Appeals to review the CEO's decisions for conformity with the ordinance. The language, however, falls short of an explicit direction that the Board of Appeals act only in an appellate capacity. As a result, the court considers the Board of Appeals as both fact finder and decision maker and reviews its decision directly. See Stewart, 2000 ME 157, ¶ 11, 757 A.2d 773 ("Because the Ordinance fails to provide explicit guidance, 30-A M.R.S.A. § 2691 applies to require that the Board undertake a de novo review of the application.").

3. Municipal Use v. Outdoor Recreational Facility

The Town argues that the CEO properly determined that the facility is a Municipal Use because the plain meaning of the definition includes any uses maintained by the Town. (Def.'s Br. 6.) Plaintiff concedes that the facility meets the definition of Municipal Use but argues that it also meets the definition of Outdoor

Recreational Facility. In plaintiff's view, the CEO should have classified the facility as an Outdoor Recreational Facility because that term is more specific than Municipal Use and the terms are in conflict. (Pl.'s Br. 4-8.)

a. Municipal Use

In interpreting an ordinance, the court looks "first to the plain meaning of its language to give effect to the legislative intent, and if the meaning of the statute or ordinance is clear, [the court] need not look beyond the words themselves." Wister, 2009 ME 66, ¶ 17, 974 A.2d 903. When the ordinance is not ambiguous, the court does not apply rules of construction. Hanson v. S.D. Warren Co., 2010 ME 51, ¶ 12, 997 A.2d 730. An ordinance is ambiguous if it is "reasonably susceptible to different interpretations." Acadia Ins. Co. v. Buck Constr. Co., 2000 ME 154, ¶ 9, 756 A.2d 515.

The definition of Municipal Use and the provision allowing Municipal Uses in the LDR are not ambiguous. A Municipal Use is "[a]ny use or building maintained by the Town of Cumberland." (R. 235-36; Cumberland, Me., Zoning Ordinance § 315-4 (June 26, 2006).) The inclusion of the word "any" indicates that the Town intended for the Municipal Use category to include all uses maintained by the Town. Plaintiff asks the court essentially to read into the definition a limitation that a Municipal Use is any use maintained by the Town unless a more specific use applies. In the ordinance, however, the Town chose not to include any limitations, in contrast to the detailed definitions of other terms. In addition, section 315-7 clearly allows Municipal Uses in the LDR zone. That section states, "The following uses are permitted in the LDR District" and includes Municipal Uses in the list. (R. 247; Cumberland, Me., Zoning Ordinance § 315-7 (June, 26, 2006).) Because these provisions are unambiguous, the court need not apply rules of construction, and may uphold the Town's decision to allow the facility in the LDR zone under a plain language analysis.

5

b. Outdoor Recreational Facility

Even if the court were to apply rules of construction, plaintiff's argument is unpersuasive because the definitions can be harmonized. Plaintiff's argument rests on the rule of construction that a specific term controls over a general term when the two conflict. The Law Court explained this rule in Butler v. Killoran:

> Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.

1998 ME 147, ¶ 11, 714 A.2d 129 (citation omitted).[1]

As a preliminary matter, the uses described for the facility are consistent with the uses included in the definition of Outdoor Recreational Facility. (R. 9, 237.) That term is defined as a "place designed and equipped primarily for the conduct of nonmotorized outdoor sports, leisure time activities, and other customary and usual recreational activities." (R. 237; Cumberland, Me., Zoning Ordinance § 315-4 (June 26, 2006).) The uses proposed in the Town's application involve "low-impact passive recreation," including walking and hiking, boating, swimming, shell fishing, picnicking, cross country skiing, and snowshoeing.[2] (R. 9.) It also appears clear that Municipal Use is a general term, while Outdoor Recreational Facility is a more specific term. Municipal

---

[1] The Town's Shoreland Zoning Ordinance also includes the following provision: "Whenever a provision of this chapter conflicts with or is inconsistent with another provision of this chapter or of any other ordinance, regulation, or statute administered by the municipality, the more restrictive provision shall control." (R. 175; Cumberland, Me., Shoreland Zoning Ordinance § 226-7 (June 26, 2006).) It is unclear whether this provision applies to the chapter containing definitions, which is a separate chapter and does not contain an analogous provision.

[2] The Town argues that the facility is not an Outdoor Recreational Facility because it does not involve the active recreational activities allowed under that term, such as campgrounds and amusement parks. (Def.'s Br. 7.) This argument is unpersuasive because the definition of Outdoor Recreational Facility expressly excludes campgrounds and amusement parks. (See R. 237; Cumberland, Me., Zoning Ordinance § 315-4 (June 26, 2006) ("A place designed and equipped primarily for the conduct of nonmotorized outdoor sports, leisure-time activities, and other customary and usual recreational activities, excluding boat launching facilities, amusement parks, and campgrounds ....") (emphasis added).

6

Use encompasses all uses maintained by the Town, while Outdoor Recreational Facility describes specific uses, such as nonmotorized outdoor sports and leisure time activities.

As discussed in the order on plaintiff's motion for preliminary injunction, these provisions can be read in harmony. When the CEO classifies a proposed use as a Municipal Use, and that finding is supported by adequate evidence, the use is allowed in the LDR zone, even if it could also be classified as a use that is prohibited in the LDR zone. See Pinkham v. Morrill, 622 A.2d 90, 95 (Me. 1993) ("[T]he court should not read a statute to conflict with another statute when an alternative, reasonable interpretation yields harmony."). This interpretation is consistent with the Town's apparent intent to allow all Municipal Uses in the LDR zone. The Town created a broad definition of Municipal Use that includes any use maintained by the Town and expressly allowed this use in the LDR zone. Preventing the Town from allowing a use that meets the definition would contravene the Town's intent.

Plaintiff argues that allowing a use that could meet the definition of Outdoor Recreational Facility contravenes the Town's intent to prohibit Outdoor Recreational Facilities in the LDR zone. (Pl.'s Br. 6.) This argument essentially asks the court to overturn the CEO's determination that the facility is a Municipal Use, even though that determination is supported by adequate evidence. It is undisputed that the Town will maintain the facility, and this fact meets the definition of Municipal Use.

The cases plaintiff cites either do not rely on the "specific v. general" rule of construction or involved provisions that could not be harmonized. (Order on Pl.'s Mot. Prelim. Inj. 8.) In Sullivan v. City of Augusta, the issue was whether a parade organizer was subject to both a parade ordinance and a mass gathering ordinance. 511 F.3d 16, 25-27 (1st Cir. 2007). The court held that the parade organizer was subject only to the parade ordinance because, unlike the mass gathering ordinance, the parade ordinance

7

regulated the conduct in which he intended to engage. Id. at 27. In other words, the court declined to construe the ordinances together not because they were in conflict but because the mass gathering ordinance simply did not apply to the facts of the case. Here, either definition arguably could apply, but they are not in conflict because a harmonious interpretation exists.

In Butler v. Killoran, the issue was whether to apply the statute of limitations in Maine's Wrongful Death Act, which requires commencement of the action within two years of the decedent's death, or the statute of limitations in Maine's Health Security Act, which requires commencement of the action within three years after the cause of action accrues. 1998 ME 147, ¶ 4, 714 A.2d 129. Under the facts of the case, plaintiff's action was timely under the Wrongful Death Act and time-barred under the Health Security Act. Id. The statutes of limitation could not be harmonized because to do so would extend the statute of limitations for actions arising from professional negligence, in violation of legislative intent. Id. ¶ 10. In contrast, harmonizing the provisions in this case furthers the Town's intent to allow all Municipal Uses in the LDR zone.

In Armstrong v. Town of Cape Elizabeth, the town's zoning ordinance contained two conflicting provisions: (1) a provision stating that expansion of a nonconforming structure may not increase the structure's nonconformity, and (2) a provision stating that expansion of a nonconforming structure may not increase the structure's nonconformity by more than 30%. 2000 Me. Super. LEXIS 275, at *14-15 (Dec. 21, 2000). The court held that the second provision prevailed because it was more specific than the first provision and the two were in conflict. Id. at *16. Although the court did not explain why these provisions could not be harmonized, it seems clear that a proposed expansion that increased nonconformity could not comply with both. Here, the facility need not comply with both definitions because the court will uphold the CEC's

8

determination that the facility meets one definition, which is supported by adequate evidence.

CONCLUSION

The meaning of Municipal Use is unambiguous, and the court need not apply rules of construction. If the court were to apply rules of construction, plaintiff's argument is unpersuasive because the ordinance's provisions can be harmonized.

The entry is

> The Decision of the Town of Cumberland Board of Adjustment and Appeals is AFFIRMED.

Date: January 5, 2016

Nancy Mills
Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-15-35

MERRILL WOODWORTH,
Personal Representative for the
ESTATE OF MERRILL P. ROBBINS,

Plaintiff

v.

INHABITANTS OF THE TOWN
OF CUMBERLAND,

Defendant
and

TOWN OF CUMBERLAND,

Party-in-Interest

ORDER ON PLAINTIFF'S
MOTION FOR A
PRELIMINARY INJUNCTION

STATE OF MAINE
Clerk's Office

SEP 1 5 2015

RECEIVED

Before the court is the motion for preliminary injunction filed by plaintiff Merrill Woodworth, as Personal Representative of the Estate of Merrill P. Robbins. Plaintiff asks the court to enjoin the Town of Cumberland from constructing a proposed beach facility on land adjacent to land owned by plaintiff. For the following reasons, the motion is denied.

## FACTS

The Town filed an application with the Cumberland Planning Board (the "Planning Board") for a permit to construct and operate the facility in Cumberland, Maine. (Compl. ¶ 9; Shane Aff. ¶ 15.) The Town proposed to construct the facility on land it owns adjacent to plaintiff's property.[1] (Compl. ¶ 6.) Both properties are subject to a conservation easement. (Compl. ¶ 7; Anderson Aff. ¶ 3; Pl.'s Ex. A.) Plaintiff has filed

---

[1] The proposed facility is a distance from plaintiff's property. (Pl.'s Ex. C, Site Overview Plan.)

1

a separate action, currently pending in the Law Court, in which he asserts that the conservation easement prohibits construction of the facility. (Compl. ¶ 8.)

On June 16, 2015, plaintiff submitted comments to the Planning Board stating that the facility is an Outdoor Recreational Facility. (Compl. ¶ 18; Anderson Aff. ¶ 6; Pl.'s Ex. C.) The Town property is located in a Low Density Residential zoning district (LDR Zone). (Compl. ¶ 14.) An Outdoor Recreational Facility, defined as a "place designed and equipped primarily for the conduct of nonmotorized outdoor sports, leisure time activities, and other customary and usual recreational activities," is not permitted in the LDR Zone. (Compl. ¶ 15; Anderson Aff. ¶ 5; Pl.'s Ex. D, §§ 315-4, 315-7.) On July 16, 2015, the Cumberland Code Enforcement Officer submitted comments and stated that the facility is a Municipal Use, defined as "any use or building maintained by the Town of Cumberland." (Compl. ¶ 19; Anderson Aff. ¶ 5; Pl.'s Ex. C, § 315-4.) Municipal Uses are permitted in the LDR Zone. (Compl. ¶ 19; Anderson Aff. 5; Pl.'s Ex. C, § 315-7.)

The Planning Board concluded that the CEO is responsible for determining zoning classifications. (Compl. ¶ 21.) As a result, the Planning Board did not decide whether the facility is an Outdoor Recreational Facility or a Municipal Use. (Compl. ¶ 21.) On July 21, 2015, the Planning Board voted to issue a permit for the facility. (Compl. ¶ 22; Anderson Aff. ¶ 8; Pl.'s Ex. F.) The Planning Board considered whether to include, as a condition of the permit, a stay to prevent the Town from beginning construction until the Law Court action was resolved. (Compl. ¶ 23.) The Planning Board decided not to include this condition. (Compl. ¶ 25.) The Town plans to begin construction on or after September 7, 2015. (Compl. ¶ 46.)

On July 30, 2015, plaintiff appealed to the Cumberland Board of Adjustments and Appeals (Board of Appeals). (Compl. ¶ 26; Anderson Aff. ¶ 4; Pl.'s Ex. B.) The

2

Board of Appeals upheld the CEO's determination that the facility is a Municipal Use. (Compl. ¶ 27.) Plaintiff then appealed to this court and moved for a preliminary injunction to enjoin the Town from constructing the facility.

## DISCUSSION

### 1. Standing

Standing to pursue an appeal under M.R. Civ. P. 80B from a decision of a zoning board of appeals is governed by 30-A M.R.S. § 2691(3)(G). Witham Family Ltd. v. Town of Bar Harbor, 2011 ME 104, ¶ 7, 30 A.3d 811. "Any party may take an appeal, within 45 days of the date of the vote on the original decision, to Superior Court from any order, relief or denial . . . ." 30-A M.R.S. § 2691(3)(G) (2014). A "party" is defined as one who has appeared before the board of appeals and is able to demonstrate a particularized injury as a result of the board's action. Sahl v. Town of York, 2000 ME 180, ¶ 8, 760 A.2d 266. When the appeal involves land use and the party's land abuts the land at issue, the party "need only allege 'a potential for particularized injury' to satisfy the standing requirement." Sproul v. Town of Boothbay Harbor, 2000 ME 30, ¶ 6, 746 A.2d 368 (quoting Pearson v. Town of Kennebunk, 590 A.2d 535, 537 (Me. 1991)). An allegation that the abutting property violates a zoning ordinance meets this minimal standard. See Rowe v. City of S. Portland, 1999 ME 81, ¶ 4, 730 A.2d 673 (allegation that abutting property violated setback requirement sufficient to establish standing). Here, plaintiff appeared before the Board of Appeals and his land abuts the Town's property. Plaintiff alleges that construction of the facility is an unpermitted use under the zoning ordinance. The court finds that this allegation satisfies the minimal threshold of a potential for particularized injury.

3

## 2. Preliminary Injunction

For preliminary injunctive relief to be granted, the movant must demonstrate that (1) it will suffer irreparable harm without an injunction, (2) any harm to the opposing party if an injunction is granted is outweighed by the harm to the movant if an injunction is not granted, (3) there is a likelihood of success on the merits, and (4) the public interest will not be adversely affected by such relief. Ingraham v. Univ. of Me., 441 A.2d 691, 693 (Me. 1982). The court must weigh all of these factors together. Dep't of Envtl. Prot. v. Emerson, 563 A.2d 762, 768 (Me. 1989). The court will not grant an injunction if the movant cannot meet all four criteria. Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res., 2003 ME 140, ¶ 10, 837 A.2d 129. When the injunction is against a governmental body, the court should proceed with restraint. Me. Human Rights Comm'n v. City of Auburn, 425 A.2d 990, 995 (Me. 1981).

### a. Irreparable Harm to Plaintiff

A party seeking injunctive relief must show he will suffer irreparable harm. Ingraham, 441 A.2d at 693. Irreparable harm is an "injury for which there is no adequate remedy at law . . . ." Bar Harbor Banking & Trust Co. v. Alexander, 411 A.2d 74, 79 (Me. 1980). Plaintiff has alleged that the facility will require significant clearing for a 44-space parking lot, disturbance of an acre of undeveloped land, construction of 17,700 square feet of paved areas, construction of a parking area near the water, and relocation of a bathroom facility. (Compl. ¶ 10.) Plaintiff states that these activities will result in "irreparable and permanent harm to these resources and to the Plaintiff." (Compl. ¶ 47.)

Environmental harm often cannot be adequately remedied by money damages, but plaintiff has not alleged facts to establish that these activities will cause irreparable harm to him. See Bangor Historic Track, Inc., 2003 ME 140, ¶ 12, 837 A.2d 129 (noting

4

that "vague generalities" suggesting harm were insufficient to support a finding of irreparable harm). At the hearing on the motion, plaintiff argued the fact of a zoning violation that involves physical alteration of the Town's property constitutes irreparable harm to plaintiff. Plaintiff relies particularly on De Schamps v. Bd. of Zoning Appeals. In that case, the Zoning Board of Appeals sought an injunction against a business owner who operated an automobile wrecking yard on his property without a permit from the Board. De Schamps v. Bd. of Zoning Appeals, 174 N.E.2d 581, 583 (Ind. 1961). The Indiana statute involved specifically provided the Board could institute a suit for injunctive relief based on a violation of the ordinance. Id., at 582-83. Other cases cited by plaintiff do not support his irreparable harm argument. See, e.g., Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 552-53 (1987) (reversing grant of injunctive relief because Alaska National Interest Lands Conservation Act did not apply to the Outer Continental Shelf); Buckeye Forest Council v. U.S. Forest Serv., 337 F. Supp. 2d 1030, 1035-36 (S.D. Ohio 2004) (Forest Council obtained preliminary injunction based on statute that permits citizens to sue to enforce compliance with the Endangered Species Act); Green Harbour Homeowners' Ass'n v. Ermiger, 889 N.Y.S.2d 687, 688-89 (N.Y. App. Div. 2009) (grant of preliminary injunction affirmed when defendant cut trees on plaintiff's property); Hunsaker v. Kersh, 991 P.2d 67, 68 (Utah 1999) (denial of preliminary injunction reversed; movants alleged damage to crops and trees if defendants interfered with irrigation water flowing to movants' land); Emerson, 563 A.2d at 764 (Department of Environmental Protection and State of Maine obtained an injunction to enforce environmental and fire safety laws); Little Joseph Realty, Inc. v. Babylon, 363 N.E.2d 1163, 1167-68 (N.Y. 1977) (grant of injunctive relief affirmed when plaintiff's property was invaded by great quantities of dust and soot from defendant's plant); Stanton v. Trs. of St. Joseph's Coll., 233 A.2d 718, 722 (Me. 1967) (dismissal of

5

landowners' action for injunctive relief vacated because "[T]he riparian owner of a non-navigable stream has an interest in the preservation of the quality of its water which is private property."); Gilbert v. Elder, 144 P.2d 194, 195-96 (Idaho 1943) (order staying temporary injunction prohibiting defendant from cutting timber from plaintiffs' land annulled). Plaintiff has not demonstrated he will suffer irreparable harm in the absence of injunctive relief.

b. Balance of Harm

Plaintiff has not demonstrated irreparable harm. The Town has invested significant resources, both in terms of time and money, to this project. (Shane Aff. ¶¶ 4-19.) Further, as discussed below with regard to the public interest, the preliminary work proposed by the Town includes installation of handicapped parking on public land and control of erosion and storm water runoff. (Shane Aff. ¶¶ 15, 18; Defs.' Ex. A; Pl.'s Ex. C.) Any injury to plaintiff does not outweigh the harm to defendants if injunctive relief is granted.

c. Likelihood of Success on the Merits

The issue is whether the facility is a Municipal Use, as the CEO determined, or an Outdoor Recreational Facility, as plaintiff contends. "Whether a proposed use falls within the terms of a zoning ordinance is a question of law . . . ." Peregrine Developers, LLC v. Town of Orono, 2004 ME 95, ¶ 9, 854 A.2d 216. The court examines first "the plain language of the provisions to be interpreted." Gensheimer v. Town of Phippsburg, 2005 ME 22, ¶ 22, 868 A.2d 161. A municipal determination as to how to characterize a use "will only be overturned if it is not 'adequately supported by evidence in the record.'" Jordan v. City of Ellsworth, 2003 ME 82, ¶ 8, 828 A.2d 768 (quoting Goldman v. Town of Lovell, 592 A.2d 165, 169 (Me. 1991)). The municipality's decision "as to what meets ordinance standards will be accorded 'substantial

6

deference.'" Rudolph v. Golick, 2010 ME 106, ¶ 8, 8 A.3d 684 (quoting Jordan, 2003 ME 82, ¶ 9, 828 A.2d 768).

The Cumberland zoning ordinance defines "Municipal Use" as "[a]ny use or building maintained by the Town of Cumberland." (Anderson Aff. ¶ 5; Pl.'s Ex. C; Cumberland, Me., Zoning Ordinance § 315-4 (Aug. 28, 2015).) The ordinance defines "Outdoor Recreational Facility" in relevant part as "[a] place designed and equipped primarily for the conduct of nonmotorized outdoor sports, leisure-time activities, and other customary and usual recreational activities, excluding boat launching facilities, amusement parks, and campgrounds . . . ." (Anderson Aff. ¶ 5; Pl.'s Ex. C; Cumberland, Me., Zoning Ordinance § 315-4 (Aug. 28, 2015).)

In its application, the Town states that the facility is for "low-impact passive recreation," including "walking and hiking, boating, swimming, shell fishing, picnicking, cross country skiing and snowshoeing." (Compl. ¶ 11; Anderson Aff. ¶ 4; Pl.'s Ex. B subsection C 1.) These uses are consistent with the outdoor sports, leisure-time activities, and recreational activities included in the definition of "Outdoor Recreational Facility." The Town will maintain the facility, however, which is consistent with the definition of "Municipal Use."

Plaintiff argues that the court should apply the "specific" term "Outdoor Recreational Facility" instead of the "general" term "Municipal Use" because of the principle that specific statutory terms control over general ones. That principle applies when there is a conflict between the two terms:

> Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.

7

Butler v. Killoran, 1998 ME 147, ¶ 11, 714 A.2d 129 (citation omitted). The cases on which plaintiff relies can be distinguished. See, e.g., Sullivan v. City of Augusta, 511 F.3d 16, 26 (1st Cir. 2007) (parade ordinance regulated the conduct in which plaintiff intended to engage and not the mass outdoor gathering, which makes no particular mention of conduct; not a zoning ordinance); Camps Newfound/Owatonna Corp. v. Town of Harrison, 1998 ME 20, ¶ 19, 705 A.2d 1109 (specific statute that addressed the precise issue involved was applied; not a zoning issue); Cumberland Farms, Inc. v. Town of Scarborough, 1997 ME 11, ¶¶ 5-6, 688 A.2d 914 (plain language of zoning ordinance required restrictive treatment of gasoline filling stations, regardless of whether gasoline is sold as a principal or accessory use); Armstrong v. Town of Cape Elizabeth, 2000 Me. Super. LEXIS 275, at *15-16 ( Dec. 21, 2000) (conflicting provisions in a zoning ordinance required application of the more specific provision).

Here, there is no conflict between the terms "Outdoor Recreational Facility" and "Municipal Use." The facility will both be maintained by the Town and used for recreational activities, making it appropriate to classify the facility under either term. The Board decided to classify it as a Municipal Use, and the court gives that decision substantial deference. As a result, plaintiff has not demonstrated a likelihood of success on the merits.

d. Public Interest

Plaintiff argues that the injunction will advance the public interest because it will ensure that public funds are not expended on a project that may violate the zoning ordinance. In addition, plaintiff urges that it would be prudent to halt construction on the facility until the Law Court has decided whether the conservation easement prohibits construction. "A plaintiff acting to vindicate the public interest has a lighter burden of establishing entitlement to an injunction than would be the case if strictly

8

private interests were involved." Horton & McGehee, <u>Maine Civil Remedies</u> § 5-3(c) at 105 (4th ed. 2004). In addition, the preliminary work proposed by the Town includes installation of handicapped parking on public land and control of erosion and storm water runoff. (Shane Aff. ¶¶ 15, 18; Defs.' Ex. A; Pl.'s Ex. C.) Plaintiff has not demonstrated the public interest will not be adversely affected by the grant of injunctive relief.

## CONCLUSION

Plaintiff has not demonstrated a likelihood of success on the merits, irreparable harm if injunctive relief is not granted, and the absence of an adverse effect on the public if injunctive relief is granted.

The entry is

Plaintiff's Motion for a Preliminary Injunction is DENIED.

Date: September 15, 2015

Nancy Mills
Justice, Superior Court

9

SCOTT ANDERSON ESQ
VERRILL & DANA
PO BOX 586
PORTLAND ME 04112-0586

NATALIE BURNS ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112