Clarence B. MICHAUD et al.

v.

NORTHERN MAINE MEDICAL CENTER.

Supreme Judicial Court of Maine.

Argued May 11, 1981.

Reargued Sept. 16, 1981.

Decided Nov. 2, 1981.

Berman, Berman & Simmons, P. A., William D. Robitzek, (orally), Jack Simmons, Lewiston, Peter M. Beckerman, Waterville, for plaintiffs.

Preti, Flaherty & Beliveau, Robert Checkoway, Christopher D. Nyhan, Portland, (orally), for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

Plaintiffs, the surviving husband and children of the late Ida Mae Michaud, appeal from the Superior Court's dismissal of their personal injury and wrongful death action against defendant, Northern Maine Medical Center (hereafter referred to as the "hospital"). The litigation arose from treatment of Mrs. Michaud at the hospital between April and September, 1977, and from her death there on September 26 of that year. The Superior Court (Aroostook County) dismissed the action with prejudice on the grounds that plaintiffs had failed to comply with 24 M.R.S.A. § 2903 (Supp. 1980),[1] which requires written notice of claim to be served on the prospective defendant 90 days before commencement of a medical malpractice action, and that the applicable two-year statute of limitations had run. We sustain the appeal.

### I.

The first question presented on appeal is whether 24 M.R.S.A. § 2903 applies to causes of action that accrued prior to that statute's effective date.

Plaintiffs filed their complaint on September 21, 1979. Previously, plaintiffs' attorney had sent the hospital's executive director a letter dated October 17, 1978, setting forth the cause of action and purporting to give the notice required by section 2903. Here, as before the Superior Court, plaintiffs conceded that the purported notice did not meet the requirements of section 2903 because it was not signed "under oath," *see Paradis v. Webber Hospital,* Me., 409 A.2d 672 (1979). At reargument, plaintiffs' counsel informed us that they have now served defendant hospital with a properly sworn notice. Of course, since it was not sent 90 days prior to commencement of the action, this new notice also does not comply with the exact requirements of section 2903 and therefore does not cure the original defect, though it may be a factor to be considered in choosing the appropriate sanction.

---

1. 24 M.R.S.A. § 2903 (Supp.1980), which is part of the Maine Health Security Act, enacted by P.L. 1977, ch. 492, § 3, effective October 24, 1977, provides:

   No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim setting forth under oath the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person or persons accused of wrongdoing. Any applicable statute of limitations shall be tolled for a period of 90 days from service of notice.

Plaintiffs argue, however, that section 2903 should not apply to their causes of action because that statute did not take effect until October 24, 1977, nearly a month after Mrs. Michaud's death on September 26, the latest date on which plaintiffs' causes of action could have accrued.[2] We agree with the Superior Court's ruling that the notice provision of section 2903, being procedural in nature, must be complied with in the commencement of any malpractice action after its effective date.

■ The scope of application of an amended or newly enacted statute is a matter of the legislature's intent, and *Miller v. Fallon*, 134 Me. 145, 148, 183 A. 416, 417 (1936), is regularly cited for the proposition that a statutory change will be given only "prospective" operation "unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used." It is sometimes said that a rule of statutory construction disfavors retroactive application. *See, e. g., Coates v. Maine Employment Security Comm'n*, Me., 406 A.2d 94, 97 (1979). However that may be, no such rule of construction comes into play when the enactment changes only the procedure governing litigation of claims, including even those already in existence when the legislation takes effect. To apply the new statute to only the procedure to be followed in future litigation on even preexisting claims is not seen as a retrospective application of the statute. *Dobson v. Quinn Freight Lines, Inc.*, Me., 415 A.2d 814, 816 (1980).

■ In a long line of cases, involving a variety of fact patterns, this court has construed statutory amendments to be applicable to causes of action arising before the amendments' effective dates where the changes related to procedure or remedy, and did not alter substantive rights. *See Merrill v. Eastland Woolen Mills, Inc.*, Me., 430 A.2d 557, 560–61 (1981) (amendment designating the Workers' Compensation Commission as the proper body to hear and

determine actions to set aside workers' compensation lump-sum settlement agreements applicable in the case of an injury sustained prior to the amendment); *Dobson v. Quinn Freight Lines, Inc., supra* (amendment extending the limitation period for commencement of certain supplemental workers' compensation proceedings held applicable to cause of action accruing before amendment's effective date); *Hawke v. Hawke*, Me., 395 A.2d 449 (1978) (amendment eliminating the requirement that both parties attend at least one marriage counselling session prior to obtaining divorce on ground of irreconcilable differences applicable to cause of action that accrued prior to effective date of amendment); *Batchelder v. Tweedie*, Me., 294 A.2d 443 (1972) (amendment of statute prescribing manner of interest assessment in civil litigation held applicable to cause of action that accrued prior to the amendment's effective date); *Thut v. Grant*, Me., 281 A.2d 1 (1971) (promulgation of new rules governing procedure in filiation action held applicable to cause of action accruing prior to effective date of revision). In the case at bar, the requirement that a medical malpractice plaintiff give notice of his claim 90 days before filing his complaint "represent[s] merely a legislatively mandated procedural device that manifest[s] the State's interest" in providing a settling-out period for malpractice claims. *Cf. Hawke v. Hawke, supra* at 451. A party acquired no vested interest in either the presence or the absence of a particular procedure. *See id.* Absent any contrary legislative intent, we read the procedural requirements of section 2903 to apply to plaintiffs' later suit upon their preexisting causes of action.

Plaintiffs, however, contend that the contrary result is required by *Langley v. Home Indemnity Co.*, Me., 272 A.2d 740, 746–47 (1971), in which this court, in the wake of the enactment of a statute requiring motor vehicle liability insurers to provide policy protection against uninsured motorists, re-

---

**2.** Plaintiffs thus raised an issue expressly reserved in *Paradis v. Webber Hospital*, Me., 409 A.2d 672, 675 (1979).

fused to reach such a provision into an automobile liability insurance policy that was written prior to the effective date of the new law. We disagree. In *Langley,* this court construed the "uninsured motorist" statute as "a legislative statement of a new policy, a radical change in the existing law," *see Batchelder v. Tweedie, supra,* at 445. This court refused to interpret the passage by the legislature of the "uninsured motorist" statute as automatically writing "uninsured motorist" coverage into every then-existing automobile liability insurance policy, because to do so would have been to read that statute as "purport[ing] to determine the legal significance of acts or events that ... occurred prior to the statute's effective date," *Dobson v. Quinn Freight Lines, Inc., supra* at 816, *quoting State Comm'n on Human Relations v. Amecon Division,* 278 Md. 120, 123, 360 A.2d 1, 3 (1976).

By contrast, application of section 2903 to the conduct of the proceedings in the case at bar had no effect whatever on the legal significance of the events preceding Mrs. Michaud's death just short of one month prior to that section's effective date. The new statute requires only that any malpractice action thereafter commenced be preceded, by at least 90 days, by a notice having the form and the substance prescribed by the statute. By concurrently providing for a 90-day tolling of the applicable statute of limitations following the service of valid notice, section 2903 furthermore removed any time burden it might otherwise have imposed on potential malpractice plaintiffs. The Superior Court properly determined that section 2903 controls in the circumstances presented by the case at bar.

## II.

■ Having determined that section 2903 governs this action, we must decide what consequences follow in *this* case from plaintiffs' failure to comply with it. We cannot agree with the hospital's argument that the action must be dismissed.

Our last statement on the subject is *Dougherty v. Oliviero,* Me., 427 A.2d 487 (1981), in which we were also asked to affirm dismissal of a complaint on the ground that section 2903 had not been complied with. In *Dougherty,* the notice in proper form was served the day after the complaint was filed, not 90 days before filing as required by the statute. Both filing of the complaint and service of the notice occurred within the two-year limitations period of 14 M.R.S.A. § 753 (1980). We held that the plaintiffs' failure to comply with section 2903 did not deprive the Superior Court of jurisdiction over the action and did not require dismissal under the circumstances there presented. Our opinion focused on the statutory purpose of providing "a period of time during which the parties can attempt to settle the claim through nonjudicial procedures before they encounter the expense, time limits, and other pressures associated with discovery and preparation for trial." 427 A.2d at 490. We went on to say:

> This statutory purpose is accomplished as long as there is a mandatory 90-day period during which no litigation can proceed.
>
> As long as an action is commenced before the expiration of the statute of limitations, we do not read section 2903 to require dismissal of what may well be a meritorious claim.

*Id.* We concluded that the action should not have been dismissed, but rather stayed for 90 days.

Our reasoning in *Dougherty* extends to the case at bar. It is true that in *Dougherty* a sworn notice was served before the expiration of the two-year statute of limitations, whereas in this case no notice under oath was served until long after the statute had run. However, the complaint in this case was filed before the expiration of the statute of limitations. Under M.R.Civ.P. 3, filing the complaint commenced the action, and we observed in *Dougherty* that section 2903 did nothing to modify Rule 3. *See* 427 A.2d at 489. The question is not whether plaintiffs brought their malpractice action within the period of limitations—unquestionably they did—but rather what is the

appropriate sanction for their failing to meet the specific notice requirements of section 2903.

As in *Dougherty*, the appropriate sanction must be determined by the circumstances of the case. In the case at bar the Superior Court entered its judgment of dismissal before we published our decision in *Dougherty*, and it therefore made no analysis of the equities relevant in determining the appropriate sanction. Here, defendant hospital, eleven months before the filing of the complaint, received notice informing it of the substance of plaintiffs' claims. Thus, well before commencement of this malpractice action against it, the hospital had adequate information to assess its exposure and adequate time to negotiate settlement or investigate further. Defendant suffered no prejudice except for the fact that the notice was not under oath and therefore not subject to sanctions for perjury, *see Paradis v. Webber Hospital, supra* at 675. We are informed that plaintiffs have now served the hospital with notice under oath; that formally correct notice thus furnishes the same basis for a perjury action as the original notice would have done had it been under oath. Of course, this attempt at *post hoc* compliance with the statute does not fulfill the statutory purpose of discouraging frivolous claims before they are ever brought. Nonetheless, we do not believe that a fair balancing of the equities in this particular case commenced prior to both *Paradis* and *Dougherty* supports dismissal of what for all we know is a meritorious claim.

Contrary to defendant hospital's contention, our dismissal of the malpractice suit in *Paradis* is not contradictory of our decision today that dismissal is too harsh a sanction for noncompliance under the circumstances here present. In *Paradis* the complaint was filed after the expiration of the controlling period of limitations,[3] but within 90 days thereafter. The only issue in *Paradis* was whether an unsworn notice was sufficient to activate the provisions of section 2903 that toll any applicable statute of limitations for a period of 90 days. *See* n. 1 above. We held that an unsworn notice did not toll the statute and therefore the dismissal of the late-filed complaint was mandated by the statute of limitations. *Paradis* did not have any occasion to decide or even speculate on what would be the appropriate sanction for noncompliance with the section 2903 notice requirements in a situation, such as that presented by *Dougherty* and the case at bar, where the complaint had been timely filed.[4]

The bar should not see *Dougherty* or this sequel to it as an invitation to carelessness in compliance with section 2903. On the contrary, these cases should be a warning that the trial court has available to it a variety of sanctions with which to enforce the equitable substance of section 2903's notice requirement.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

GODFREY, NICHOLS, ROBERTS and CARTER, JJ., concurring.

WATHEN, J., with whom VIOLETTE, J., joins, dissenting.

3. *Paradis v. Webber Hospital, supra*, came to this court on a Rule 72(c) interlocutory report from a denial of the motions to dismiss filed by two physicians, who were co-defendants of Webber Hospital. As to the physicians who alone were before this court in *Paradis*, the two-year period of limitations of 14 M.R.S.A. § 753 (1980), controlled without question.

4. Holding as we do that the action should not have been dismissed, we need not consider plaintiffs' claim that their case against the hospital is governed by the general six-year statute of limitations in 14 M.R.S.A. § 752 (1980), and not the two-year limitations specially prescribed by 14 M.R.S.A. § 753 (1980) (actions for "malpractice of physicians and all others engaged in the healing art"), 24 M.R.S.A. § 2902 (Supp.1980) (applicable to malpractice actions against hospitals, effective October 24, 1977), or former 18 M.R.S.A. § 2552 (Supp.1976) (wrongful death actions). The former 18 M.R.S.A. § 2552 has been taken into the Probate Code as 18–A M.R.S.A. § 2–804(b) (1981).

WATHEN, Justice, with whom VIOLETTE, Justice, joins, dissenting.

I must respectfully dissent. While I agree with Part I of the majority opinion in which it is determined that 24 M.R.S.A. § 2903 (Supp.1980) governs this action, I cannot agree with the majority's interpretation of that provision, nor the extension of the rationale previously announced in *Dougherty v. Oliviero*, Me., 427 A.2d 487 (1981). The majority interprets non-compliance with Section 2903 as giving rise to an affirmative defense under M.R.Civ.P. 8(c) and then concludes that the statute leaves to the Court the determination of an appropriate sanction for non-compliance, giving due regard to the facts of the individual case and the equitable substance of the statute. That such a complicated and uncertain analytical process should arise out of the plain language of Section 2903 is striking. That section provides unambiguously "[n]o action ... shall be commenced until at least 90 days after written notice of the claim" has been served upon the person accused of wrongdoing. Noticeably absent is any language to soften the effect of the clear and unequivocal prohibition. In other areas when the legislature has wished to temper the harsh results of similar provisions, they have demonstrated that they are capable of doing so expressly. For example, in the Maine Tort Claims Act 14 M.R.S.A. § 8107(4) (1980) it is provided that substantial compliance with the notice requirement will suffice.

The majority interpretation of Section 2903 first appeared in *Dougherty* where this Court saved from dismissal an action in which the complaint was filed and the notice was served within the applicable statute of limitations notwithstanding the fact that the notice was served one day after the filing of the complaint, rather than 90 days before. In the present case the majority permits the action to be salvaged notwithstanding the fact that no valid notice was ever served within the statute of limitations even though suit was timely filed. It is apparent that the legislative purpose has not been served. The *ad hoc* fashioning of sanctions for non-compliance is not only unwise but also unnecessary in those instances where the legislature has prohibited the commencement of the action. The result in this particular case is less important than the precedent that the phrase "no action shall be commenced" carries with it no sanctions but rather leaves open to the Court the choice of sanctions, to be determined in accord with the "equitable substance" of the statute. The general statute of limitations set forth in 14 M.R.S.A. § 752 (1980) is not distinguishable from Section 2903. It merely provides that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards ...." If a similar analysis were undertaken with regard to Section 752, arguably it would lead to the conclusion that since no sanction is expressed it is the function of the Court to select an appropriate sanction. I cannot accept such a result as a correct interpretation of legislative intent. A statute prohibiting the commencement of an action need say no more to require a dismissal of any action filed in violation of its terms. I would affirm the judgment below.