1997 ME 176

**Toni BRAND**

v.

**Judith SEIDER.**

Supreme Judicial Court of Maine.

Argued June 11, 1997.

Decided Aug. 5, 1997.

Joel C. Vincent (orally), Kenneth P. Altshuler, Altshuler & Vincent, Portland, for plaintiff.

William W. Willard, Glenn Israel (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiff Toni Brand appeals from an order of the Superior Court (Cumberland County, *Saufley, J.*) dismissing her complaint against defendant Judith Seider, a psychologist. The court dismissed the complaint on the basis that plaintiff failed to file a notice of claim pursuant to the Maine Health Security Act (HSA), 24 M.R.S.A. § 2501 *et seq.* (1990 & Supp.1996).[1] Plaintiff argues that the

1. 24 M.R.S.A. § 2903 (Supp.1996) provides that "(n)o action for professional negligence may be

commenced until the plaintiff has ... (s)erved

HSA does not apply because her claim for breach of confidentiality is not an "action for professional negligence" within the meaning of 24 M.R.S.A. § 2502(6) (1990). She argues in the alternative that if the claim is subject to the HSA, the appropriate remedy is to stay the action to permit her to comply with the notice requirement. We conclude that plaintiff's claim is governed by the HSA and that the court erred in denying plaintiff's request for a stay. Accordingly, we vacate the judgment.

[¶ 2] Plaintiff's complaint alleges that defendant provided psychological counseling services to her in February 1992, and thereafter provided similar services to plaintiff's daughter and the daughter's father without plaintiff's knowledge. During the time that defendant provided these latter services, she allegedly disclosed confidential information about plaintiff and her son without plaintiff's consent. This confidential information was allegedly conveyed to the father of plaintiff's daughter and his attorney in December 1992, when plaintiff and the father were engaged in litigation over the custody and care of their daughter. The complaint further alleges that, despite plaintiff's protests, defendant continued her counseling relationship with plaintiff's daughter until October 1993.

[¶ 3] The complaint was filed on February 20, 1996. In defendant's answer, she raised the affirmative defenses of failure to comply with the HSA, failure to state a claim upon which relief can be granted, and comparative negligence. She then moved to dismiss the claim for failure to comply with the notice of claim provisions of the HSA. At the hearing on the motion, the court ruled that the HSA governed plaintiff's claim and granted the motion to dismiss. The court denied plaintiff's request for a stay of the dismissal to allow her to comply with the HSA, stating that it had no authority to do so.

[¶ 4] We find no merit in plaintiff's first argument that the HSA applies only to traditional negligence claims and does not govern a claim for breach of confidentiality

by a health care practitioner.[2] The HSA defines an "action for professional negligence" as:

> any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services.

24 M.R.S.A. § 2502(6)(1990). In recognition of the legislative intent to have the HSA "fully occupy the field of claims brought against health care providers," we have construed this statutory definition broadly. *Dutil v. Burns*, 674 A.2d 910, 911 (Me.1996) (strict liability and breach of warranty claims governed by the HSA) (citing *Musk v. Nelson*, 647 A.2d 1198, 1201 (Me.1994)). Plaintiff does not escape the provisions of the HSA merely by alleging a breach of a professional code of conduct as opposed to a breach of a standard of professional care.

[¶ 5] Plaintiff argues also that her action did not "aris[e] out of the provision or failure to provide health care services," as required by section 2502(6), because the alleged breach occurred after the termination of the professional relationship. The trial court's reasoning in this regard, however, is persuasive:

> [T]he bottom line here is that the claims of Toni Brand, although they do not fall within the typical psychologist/patient period of treatment, do involve the provision of or failure to provide health care services because there was a continuing duty to Ms. Brand and that duty was a duty that arose out of the professional services provided by Ms. Seider to Ms. Brand and those professional services did not simply terminate on the date that the relationship terminated, but a continuing duty to treat information gained with confidentiality existed ... it is that duty that is alleged to have been violated.

Defendant's alleged breach of confidence, the disclosure of information gained within the

---

and filed written notice of claim in accordance with section 2853."

**2.** It is conceded that a psychologist is a health care practitioner. 24 M.R.S.A. § 2502(1–A) (1990).

context of the patient-therapist relationship, constitutes a failure to perform her professional duties and a "failure to provide health care services."

[¶ 6] Having determined that plaintiff's claim is governed by the HSA, we next address the appropriate remedy for her failure to comply with the notice requirement. Plaintiff argues that the court erred in ruling that it had no authority under the statute to stay the proceedings to permit her to serve the written notice of claim required by HSA. In *Dougherty v. Oliviero*, 427 A.2d 487 (Me. 1981), we held that dismissal is not required by the statute as long as an action is commenced before the expiration of the statute of limitations. *See also Michaud v. Northern Maine Medical Center*, 436 A.2d 398 (Me.1981).[3] In the present case, defendant has not raised the statute of limitations as an affirmative defense. Under these circumstances, the court erred in denying plaintiff's request for a stay of the proceedings.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

RUDMAN, Justice, with whom GLASSMAN and LIPEZ, JJ., join, concurring.

[¶ 7] Although I agree with the Court that the judgment should be vacated, I write separately to emphasize my view that the Legislature never intended that Brand's suit based on Dr. Seider's disclosure of confidential information would fall within the ambit of the Health Security Act (HSA). I have no quarrel with the Court's conclusion that the Legislature's intent in enacting the HSA was to streamline litigation of claims of negligent medical treatment by requiring that they be presented to a pre-litigation screening panel. *Dutil v. Burns*, 674 A.2d 910, 911 (Me.1996). Nevertheless, I believe that by its decision today the Court extends the applicability of the HSA beyond the bounds intended by the Legislature; indeed, the Court's reasoning would place any action against a health care practitioner within the purview of the Act.

[¶ 8] Although the Legislature used broad language in defining those actions encompassed by the Act,[4] the legislative purpose was to respond to what it perceived as a crisis in the health care industry. Before enacting the HSA in 1977, the Legislature appointed a commission, chaired by the late Justice Charles A. Pomeroy, to study the rising costs of medical malpractice insurance and to propose measures the Legislature could take to bring those costs under control. Nearly two years of work went into the commission's report to the Legislature, and the resulting legislation was the precursor to the mandatory prelitigation screening panels that are in place today.[5] As Representative Morton of Farmington, one of two legislative members of the commission, reported to the House of Representatives, the commission sought by its recommendations to:

[r]eassure the medical community, to assure the public of controlled quality of health care delivery, to avoid the erosion of legal rights and to demonstrate to the insurance industry that Maine remains a viable market for their essential services.

24 M.R.S.A. § 2903 (1990 & Supp.1996).

3. In *Dougherty* and *Michaud*, we interpreted an earlier version of section 2903 (repealed and replaced by P.L.1985, c. 804) that provided "no action ... shall be commenced until at least 90 days after written notice of claim ... is served...." The statute has since been amended to provide that:

No action for professional negligence may be commenced until the plaintiff has:
A. Served written notice of claim in accordance with section 2853;
B. Complied with the provisions of subchapter IV-A (prelitigation screening panel process); and
C. Determined that the time periods provided in section 2859 have expired.

4. Pursuant to 24 M.R.S.A. § 2502(6), an "action for professional negligence" is "any action for damages for injury or death ... whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S.A. § 2502(6) (1990).

5. Pursuant to the 1977 legislation, the use of prelitigation panels was optional. 24 M.R.S.A. § 2803 (repealed, Laws 1985, c. 804, § 11, eff. January 1, 1987). The statute enacted to replace § 2803 made the use of prelitigation screening and mediation panels mandatory. 24 M.R.S.A § 2853 (1990 and Supp.1996).

2 Legis. Rec. 1947 (1977). Given those often contradictory considerations, the Legislature created a program that sought to bring order to a medical malpractice system that the Legislature viewed as spinning out of control. Even though the voluntary prelitigation screening system has now become mandatory, the underlying legislative purpose, "to develop a more equitable system of relief for malpractice claims," has not changed. L.D. 727, Statement of Fact (108th Leg.1977).

[¶ 9] In our jurisprudence concerning the Health Security Act, we must recognize that the Act limits the liability of health care providers in derogation of the legal rights of potential plaintiffs. *Hunter v. Totman,* 146 Me. 259, 265, 80 A.2d 401 (1951) ("In the construction of a statute the fundamental rule is the legislative intent ... but a statute in derogation of the common law is strictly construed and is not extended by implication.").

[¶ 10] The difficulty in interpreting the HSA arises from the ambiguity in the phrase "arising out of." Seider argues, and the Court agrees, that her alleged breach of confidentiality is an act "arising out of" the provision of health care because her duty to keep information confidential arose while Brand was her patient. Brand counters that Seider's breach of confidentiality occurred independently of the provision of health care services and thus does not fall within the Act. When the language of a statute is susceptible to different interpretations, we seek to read the statute in a way that best conforms to the purpose of the law. "In construing a statute, we must bear in mind the fundamental rule that such a construction ought be put upon a statute as may best answer the intention which the legislators had in view, and when determinable and ascertained, the courts must give effect to it." *Town of Arundel v. Swain,* 374 A.2d 317, 319 (Me. 1977) (citations omitted).

[¶ 11] Pursuant to 24 M.R.S.A. § 2502(6), an "action for professional negligence" is "any action for damages for injury or death ... whether based upon tort or breach of contract or otherwise, arising out of the provision of failure to provide health care services." Although Seider would not have been in possession of confidential information concerning Brand were it not for the fact that Brand was once a patient of Seider, Seider's disclosure was completely unrelated to the provision of health care services to Brand. As one court has written:

> The gravamen of plaintiff's complaint in the instant action is not defendants' malpractice in furnishing medical treatment to him, but rather defendants' failure in fulfilling his independent duty not to disclose confidential information without plaintiff's consent. Defendants' alleged breach of this duty did not arise during the process in which Dr. Ginsberg was utilizing the skills which he had been taught in examining, diagnosing, treating or caring for the plaintiff as his patient.

*Tighe v. Ginsberg,* 146 A.D.2d 268, 271, 540 N.Y.S.2d 99 (1989). The mere fact that Seider would not have been in possession of confidential information concerning Brand but for the fact that Seider was once Brand's therapist does not mean that later disclosure of that information "arise[s] out of provision of health care services." The source of the information is irrelevant. The only question is whether the disclosure of the information arose out of Seider's provision of health care services to Brand. Since the disclosure had absolutely nothing to do with Seider's provision of health care services to Brand, Brand's action is not covered by the HSA. *Humphers v. First Interstate Bank of Oregon,* 68 Or.App. 573, 684 P.2d 581, 584 (1984) ("The mere fact that [physician] utilized his medical records to enable him to take that action in 1980 does not make the action the practice of medicine" and act of physician in disclosing confidential patient information 20 years after termination of treatment of that patient is not medical malpractice), *aff'd in part and rev'd in part,* 298 Or. 706, 696 P.2d 527 (Or.1985).

[¶ 12] The Court concludes that because the separate duty to keep information confidential arose during the period in which Brand was a patient of Seider, the disclosure of that information, unrelated as it is to the provision of health care services, falls within the HSA. Notwithstanding the well established principles of law pertaining to the duty

to a business invitee, the Court's interpretation of the statute would require a patient who seeks to recover damages for injuries sustained as a result of a slip and fall from the steps leading to her doctor's office to comply with the provisions of the Act. The Legislature could not have intended such a result. Clearly not every act of negligence or breach of contract by a health care practitioner constitutes medical malpractice. *Cf. Merchants National Bank v. Morriss,* 269 F.2d 363, 366–67 (1st Cir.1959) (physician accidently sticks mother with needle while she is holding child for doctor to vaccinate; held to be a malpractice action because malpractice covers "conduct of a person while purporting to engage in the healing art ...."). Since Brand's action involves allegations of conduct unrelated to the provision of or failure to provide health care services to her, it is not within the ambit of the HSA.

[¶ 13] I would vacate the judgment for a different reason than that relied on by the Court.