STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-44

HARPSWELL COASTAL ACADEMY,
et al.,

Plaintiffs

v.

ORDER

M.S.A.D. 75,

Defendant

STATE OF MAINE
Cumberland. ss. Clerk's Office

DEC 19 2016

RECEIVED

Before the court is a motion for summary judgment by defendant M.S.A.D. 75.

In this action plaintiffs Harpswell Coastal Academy, Wesley Withers, Carrie Withers, and John Doe seek to establish that students at charter schools have a statutory and constitutional right to try out for athletic teams and other extracurricular activities at their local public schools even when the local school superintendent has determined that students at the local public schools should have first priority.

The specific dispute that gave rise to this action was a decision by MSAD 75 Superintendent Bradley Smith that the son of plaintiffs Wesley and Carrie Withers, a student attending Harpswell Coastal Academy who is designated as "John Doe" in this action, would not be allowed to try out for the 8th grade basketball team at Mt. Ararat Middle School.

In an order dated January 16, 2016 the court denied a motion by plaintiffs for a stay of administrative action and a preliminary injunction. Subsequently, in an order dated June 16, 2016 the court ruled against plaintiffs' Rule 80B appeal from the Superintendent Smith's decision.

The remaining issues in this case are plaintiffs' claim in Count II of the complaint for a declaratory judgment that respondent MSAD 75's policy violates 20-A M.R.S. § 2415 and

plaintiffs' section 1983 claim in Count III that John Doe has been deprived of equal protection under the U.S. Constitution.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case plaintiffs have admitted virtually all of the statements in MSAD 75's Statement of Material Facts (SMF), and the court concludes that all material facts are undisputed. Although plaintiffs have raised certain objections to the evidentiary support offered for two of the assertions in MSAD 75's SMF, in the court's view those objections are either not well-founded or verge on the hypertechnical.[1] In any event, the court would reach the same result even if it disregarded those assertions in their entirety.

---

[1] Plaintiffs argue that defendants cannot rely on an April 22, 2015 letter from MSAD 75 Superintendent Smith because it was not stipulated to by the parties or authenticated by any affidavit. See Plaintiffs' Response to Defendant's SMF ¶ 23. However, plaintiffs do not dispute the statement by MSAD 75 that the parties had agreed that their previously filed Joint Stipulation of Facts – which includes Smith's April 22, 2015 letter (Stipulation ¶ 21) – would be binding on the parties and would be part of the summary judgment record. See the introduction to MSAD 75's Statement of Material Facts and MSAD 75's

The essential facts are that one or more students at Harpswell Coastal Academy, a charter school that enrolls students in grades 6-11, have sought to try out for the Mt. Ararat athletic teams but were denied the opportunity to try out by Bradley Smith, Superintendent of MSAD 75. The students who have sought to try out for Mt. Ararat athletic teams reside within MSAD 75. Harpswell Coastal Academy does currently not offer extracurricular athletic activities or field athletic teams.

The decision by Superintendent Smith not to let the Harpswell Coastal Academy students try out was based on a July 2015 policy adopted by MSAD 75 which states that an MSAD 75 school

> does not have capacity to provide a charter school student the opportunity to participate in extracurricular activity when all available slots and positions for the activity are taken by regularly enrolled students. A student enrolled in MSAD 75 schools will not be denied the opportunity to participate in favor of a student enrolled in a charter school.

In cases where not enough regular Mt. Ararat students have sought to try out for a team to fill all the existing slots, Superintendent Smith has allowed Harpswell Coastal Academy students to participate. Defendant's SMF ¶ 28 (admitted).

Plaintiffs are not seeking relief that would require MSAD 75 to expand the rosters of existing teams to accommodate Harpswell Coastal Academy students. *See* Petitioners' Rule 80B brief at 8 n.3 ("Plaintiffs do not challenge MSAD 75's right to determine the size of its extracurricular teams"). They are instead seeking to require MSAD 75 to allow charter school

Amended Motion for Summary Judgment at 2 n.1. Plaintiffs also argue that the legislative file appended to the Carey Affidavit has not been properly authenticated. While they may or may not be correct that legislative files do not constitute factual evidence for purposes of summary judgment, courts routinely take judicial notice of those files as part of a statute's legislative history. *E.g., Blanchard v. MDOT*, 2002 ME 96, ¶¶ 24-25, 798 A.2d 1119; *In re Opinion of Justices*, 281 A.2d 321, 324 (Me. 1971).

The court does agree with plaintiffs that MSAD 75's responses in its Reply SMF that it is "unable to admit or deny" factual assertions in plaintiffs' Statement of Additional Material Facts should be deemed to be admissions. None of those admissions would affect the court's decision.

3

students to try out for the existing slots on the team in competition with public school students enrolled in MSAD 75.

Alleged Violation of 20-A M.R.S. § 2415 (Complaint Count II)

On this issue the court has twice considered the issue of whether MSAD's policy violates 20-A M.R.A. § 2415 and has nothing to add to its prior rulings. See order dated January 16, 2016 at 3-5; order dated June 16, 2016 at 3-7. Based on the discussion in those rulings, the court concludes that MSAD 75 is entitled to summary judgment on Count II of plaintiffs' complaint.

Alleged Violation of Equal Protection (Complaint Count III)

Count III of plaintiffs' complaint is a section 1983 claim that MSAD's policy violates equal protection. Faced with a claim that a governmental policy subjects similarly situated individuals to differential treatment, the court must first determine whether the policy involves either a fundamental right or a suspect class that has been found to trigger strict scrutiny.[2] If no fundamental rights or suspect classes are involved, the remaining question is whether the governmental policy at issue is rationally related to a legitimate governmental interest. *E.g., Town of Frye Island v. State*, 2008 ME 27 ¶ 15, 940 A.2d 1065; *Anderson v. Town of Durham*, 2006 ME 39 ¶ 29, 895 A.2d 944. Plaintiffs do not argue that fundamental rights or suspect classes are involved and apparently concede that rational basis scrutiny applies in this case. Plaintiffs' Opposition to Motion for Summary Judgment at 18.

---

[2] MSAD 75 argues that no differential treatment is involved here because the parents of students at Harpswell Coastal Academy chose for educational reasons to send their children to a school that does not have athletic teams. The court does not need to reach this argument because MSAD 75's policy would in any event survive rational basis review.

4

Under the rational basis standard, the burden is on the party challenging the government action to demonstrate that "there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals. *Anderson v. Town of Durham*, 2006 ME 39 ¶ 29. Accordingly, the plaintiffs have "the burden of proof to negative every conceivable basis" that might support MSAD's policy. *E. Perry Iron & Metal Co. v. City of Portland*, 2008 ME 10 ¶ 28, 941 A.2d 457, quoting *FCC v. Beach Communications*, 508 U.S. 307, 315 (1993). The Law Court's decision in *E. Perry Iron & Metal Co.* demonstrates that this deferential rule applies not just to state and federal legislative enactments but to local ordinances. And the U.S. Supreme Court's decision in *FCC v. Beach Communications* establishes that the relationship of a challenged policy to a legitimate governmental interest "is not subject to courtroom factfinding." 508 U.S. at 315.

As previously stated, if the decision were up to the court, it would allow Harpswell Coastal students to try out. Nevertheless, it cannot conclude that there is no rational relationship between MSAD 75's policy and a legitimate governmental interest. For every charter school student who might be given a place on a Mt. Ararat team, a regular Mt. Ararat student would have to be excluded. Extracurricular athletics are one of the benefits of public education. Bonds of friendship are formed on athletic fields, and coalescing to support school teams is a significant source of school pride and school community spirit. It is therefore rational to determine that, unless not enough regular Mt. Ararat students try out for a team, a Mt. Ararat team should be composed of classmates at the Mt. Ararat school.

MSAD 75 is therefore entitled to summary judgment on plaintiffs' equal protection claim.

5

The entry shall be:

      1. Defendant's motion for summary judgment on counts II and III of plaintiff's complaint is granted, and judgment is entered for defendant on this counts.

      2. Because the court ruled on Count I of plaintiffs' complaint in its June 16, 2016 order, this order shall constitute a final judgment on all the claims in this case.

      3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December 19, 2016

                            Thomas D. Warren
                            Justice, Superior Court

STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.   CV-14-58

PAF-YOR-08-27-14

MAURA PRICE, M.D.,

        Plaintiff

v.

        ORDER ON PENDING MOTIONS

ELISABETH DELPRETE, D.O.,
JANE DOE, D.O. and
SOUTHERN MAINE HEALTH CARE,

        Defendants

Doctor Maura Price brought a ten-count complaint against Doctor Elisabeth DelPrete, her partner referred to as Doctor Jane Doe and Southern Maine Health Care based on a claim that Dr. DelPrete examined Dr. Price's personal medical records without authorization and disclosed their contents. Three related motions have been briefed and argued. They address the question of whether the suit is governed by the Maine Health Security Act and whether the complaint supports invasion of privacy claims.

The plaintiff brought her suit in part based on the protections found at 22 M.R.S. §1711-C, which protect the confidentiality of health care information. There is no dispute that the information that was allegedly accessed constitutes "health care information." 22 M.R.S. §1711-C(1)(E). There is no claim that the defendants DelPrete or Doe had any authorization or right to view the records without authorization. Neither Dr. DelPrete nor Dr. Doe were the plaintiff's doctors or in any manner involved in her treatment. Any viewing of the records was for voyeuristic,

snooping or spying purposes rather than for medical treatment or any legitimate purpose.

Pursuant to 22 M.R.S. §1711-C(13) an individual whose rights have been violated may bring a civil action seeking an injunction, costs, forfeiture and penalty. An aggrieved individual may also pursue "all available common law remedies, including but not limited to an action based on negligence." The initial question is whether this suit, based in large part on 22 M.R.S. §1711-C(13), is also subject to the Maine Health Security Act and its pre-litigation screening provisions. 24 M.R.S. §§2851-*et seq.*

The legislature has defined "Action for professional negligence" to mean "...any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. §2502(6). The defendant doctors are "health care practitioners", 24 M.R.S. §2502(1-A) and Southern Maine Health Care is a "health care provider", 24 M.R.S. §2502(2). The questions are whether the actions of the doctors or the actions or inactions of Southern Maine "arise out of the provision or failure to provide health care services."

A decision by one doctor to look at the medical records of another person, who is not a patient, for entirely personal reasons unrelated to the provision of medical care does not constitute the provision of health care services. It is no more governed by the Maine Health Security Act than a car accident involving two doctors. See generally *D.S. v. Spurwink Services, Inc.*, 2013 ME 31, 65 A.2d 1196.

The current dispute differs from that in *Brand v. Seider*, 1997 ME 176, 697 A.2d 846. That case involved a claim of breach of confidentiality after health care services concluded. Here the plaintiff was never a patient of either of the defendant doctors.

2

If they examined her records there was no apparent legitimate reason to do so and the viewing of the records, outside the context of even the most expansive view of a doctor-patient relationship, would not be for the purpose of providing health care services. Also see the thoughtful concurring opinion of three justices in *Brand* for a narrower interpretation of "arising out of."

While it is a closer question the complaint against Southern Maine does not arise out of the provision or failure to provide health care services. There is no claim that the actual health care services provided by Southern Maine to Dr. Price as part of her diagnosis, treatment and any follow up care deviated in any manner from the applicable standard of care. While the maintenance of confidentiality improves patient confidence the claim is not related to the provision of services.

In cases of professional negligence that are governed by the Maine Health Security Act the screening panel and ultimately any jury is asked whether the acts or omissions complained of constitute a deviation from the applicable standard of care. 24 M.R.S. §2855(1)(A). Expert testimony is normally required as to the applicable standards and whether there was a deviation. These types of cases involve questions such as what tests should be ordered, how the tests should be interpreted, what surgical or other intervention is advisable and how the procedure should be performed. None of those concerns exist here because health care services were not being provided.

It is correct that the Maine Health Security Act was intended to "fully occupy the field of claims brought against health care providers." See *Brand* at ¶4, referring ultimately to *Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994). However, the complaint must arise out of the provision or failure to provide health care services. This case does not.

In Count I of the complaint the plaintiff brought an invasion of privacy claim based on intrusion of seclusion against Dr. DelPrete. There is a similar claim in Count IV against Dr. Doe. The defendants have filed a motion to dismiss.

While I agree that the unauthorized viewing of medical records could constitute an invasion of privacy, the viewing in this case does not fit the requirements for the intrusion of seclusion subset of invasion of privacy. There are four types of invasion of privacy recognized as torts by the Maine Supreme Judicial Court. See *Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1991). Among them is intrusion upon solitude or seclusion. This type was reviewed in *Nelson v. Maine Times*, 373 A.2d 1221 (1977). That opinion quoted from the Restatement (Second) of Torts at §652B for the proposition that "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

The defendant doctors did not enter the plaintiff's home or office or any physical space occupied by the plaintiff. The actions in this case, despite the words "or otherwise", fail to meet the requirement in *Nelson*, at 1223, that "... a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion." An earlier case, which did allow a claim, involved an actual entry into the hospital room of a dying person. See *Estate of Berthiaume v. Pratt, M.D.*, 365 A.2d 792 (Me. 1976). The dismissal of Counts I and IV does not suggest that the doctor defendants' alleged conduct is acceptable only that the conduct does not constitute an invasion of seclusion privacy claim. If the words "or otherwise" are to be expanded to include violations using modern technology without a physical intrusion the Law Court will, in due time, do so.

4

In Counts II and V Dr. Price has brought invasion of privacy through public disclosure of private facts complaints against defendants DelPrete and Doe respectively. The defendants wish to dismiss these counts as well. Here, however, the complaint alleges sufficient facts to allow those claims to proceed.

The entries are:

Motion of Southern Maine Health Care to dismiss or stay is denied.

Motion to impound is denied.

Motion to dismiss of defendants Elisabeth DelPrete, D.O. and Jane Doe, D.O. is granted in part and denied in part. Counts I and IV of the complaint are dismissed.

Dated: August 27, 2014

Paul A. Fritzsche
Justice, Superior Court

CV-14-058

ATTORNEYS FOR PLAINTIFF:
CELINE M BOYLE
COURTNEY S MICHALEC HART
SHAHEEN & GORDON
PO BOX 1179
SACO ME  04072

ATTORNEY FOR DEFENDANT SOUTHERN MAINE HEALTH CARE:
CHRISTOPHER TAINTOR
NORMAN HANSON & DETROY LLC]
PO BOX 4600
PORTLAND ME  04112

ATTORNEYS FOR DEFENDANTS ELISABETH DEL PRETE, DO & JANE DOE DO
JAMES MARTEMUCCI
ROBERT HAYES
GERMANI MARTEMUCCI RIGGLE & HILL
43 DEERING STREET
PORTLAND ME  04101