MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 139
Docket:       Yor-18-512
Submitted
  On Briefs:  June 26, 2019
Decided:      August 20, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

ANN SALERNO

v.

SPECTRUM MEDICAL GROUP, P.A.

HJELM, J.

[¶1]  In December of 2017, Ann Salerno filed a complaint in the Superior Court (York County) against Spectrum Medical Group, P.A., stating a claim for personal injury based on premises liability.  In her complaint, Salerno alleged that more than three years earlier she slipped, fell, and sustained injuries in the locker room of a facility "owned and run" by Spectrum.  Spectrum moved for the court to dismiss Salerno's complaint on the ground that, in reality, the claim was for medical negligence, which must be brought in accordance with the procedural requirements of the Maine Health Security Act (MHSA), 24 M.R.S. §§ 2501-2988 (2018).  The court (*O'Neil, J.*) entered an order denying Spectrum's motion, and Spectrum appeals that order.  We agree with Spectrum that this interlocutory appeal falls within an exception to the final judgment

rule. Reaching the merits, we affirm the order denying Spectrum's motion to dismiss.

## I. BACKGROUND

[¶2] The following facts are drawn from Salerno's complaint, which are deemed admitted for purposes of this appeal, *see Lawson v. Willis*, 2019 ME 36, ¶ 2, 204 A.3d 133, and from the procedural record.

[¶3] In June of 2014, Salerno underwent hip replacement surgery, after which she was required to follow strict precautions to protect her new hip. Two months after the surgery, on August 6, 2014, Salerno went to a facility in Saco owned by Spectrum to engage in water therapy. Although the water therapy itself took place in an area of the premises that was operated by a different entity, Spectrum operated a locker room where Salerno changed from her swimsuit into her street clothes. Because of the surgery, Salerno needed to use a bench to change her clothes. That day, however, the only bench in the locker room was covered by a heavy rubber mat that should have been on the floor in front of a nearby shower stall. The shower stall had a handicapped-accessible seat, which Salerno attempted to use because the bench was not available. While attempting to get to the seat in the shower stall, Salerno slipped, fell, and was injured.

[¶4]  More than three years later, on December 11, 2017, Salerno filed a complaint against Spectrum stating a tort claim for premises liability.  Spectrum moved to dismiss Salerno's claim, *see* M.R. Civ. P. 12(b)(6), asserting that the facts alleged in the complaint actually constitute an action for professional negligence as defined by the MHSA, *see* 24 M.R.S. § 2502(6), and that her claim is therefore controlled by that Act, *see id.* § 2903(1) (stating "[n]o action for professional negligence may be commenced until the plaintiff has" complied with the requirements of this section).  Spectrum further asserted that because the MHSA provides a three-year statute of limitations for "actions for professional negligence," *id.* § 2902, Salerno's complaint was time-barred.

[¶5]  In an order issued in November of 2018, the court denied Spectrum's motion, concluding that Salerno's claim, as alleged, does not arise out of the provision or failure to provide healthcare services within the meaning of the MSHA, *see* 24 M.R.S. § 2502(6), and therefore Salerno's claim "does not fall under the MHSA and was timely commenced," *see* 14 M.R.S. § 752 (2018) (stating that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues . . . except as otherwise specially provided").  Spectrum filed this interlocutory appeal challenging the court's denial of its motion to dismiss.  *See* 14 M.R.S. § 1851 (2018).

4

## II. DISCUSSION

[¶6]  Before we can consider the merits of Spectrum's contentions on appeal, we must first address whether those contentions are cognizable at this stage of the case.

### A.    Interlocutory Appeal

[¶7]  "The denial of a motion to dismiss is not a final judgment, and ordinarily we would dismiss the appeal from the denial as an interlocutory appeal." *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 23, 956 A.2d 110. "A party urging that we reach the merits of an otherwise interlocutory appeal has the burden of demonstrating to us that . . . [an] exception[] to the final judgment rule justifies our reaching the merits of the appeal." *Sanborn v. Sanborn*, 2005 ME 95, ¶ 6, 877 A.2d 1075. Spectrum contends that this interlocutory appeal is excepted from the final judgment rule because it falls within the death knell exception.[1]

---

[1]  Spectrum also contends that its challenge is cognizable on appeal either pursuant to the judicial economy exception to the final judgment rule or because there exist extraordinary circumstances justifying an ad hoc exception to that rule.  For the following reasons, neither assertion is persuasive.

First, the judicial economy exception to the final judgment rule arises only "in those rare cases in which appellate review of a non-final order can establish a final, or practically final, disposition of the entire litigation.  It applies only when a decision on the appeal . . . regardless of what it is, would effectively dispose of the entire case." *Bond v. Bond*, 2011 ME 105, ¶ 12, 30 A.3d 816 (alteration in original) (quotation marks omitted).  That is not the case here because if we were to affirm the court's decision—as we do—the case would remain pending.

[¶8] The death knell exception to the final judgment rule justifies consideration of issues raised on an interlocutory appeal only if awaiting a final judgment will cause "substantial rights of a party [to] be irreparably lost." *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 14, 974 A.2d 918 (quotation marks omitted). "A right is irreparably lost if the appellant would not have an effective remedy if the interlocutory determination were to be vacated after a final disposition of the entire litigation." *Id.* (quotation marks omitted). This exception is available "only when the injury to the appellant's claimed right, absent appeal, would be imminent, concrete and irreparable." *Id.* ¶ 16 (quotation marks omitted); *see e.g.*, *Geary v. Stanley Med. Research Inst.*, 2008 ME 9, ¶ 11, 939 A.2d 86 (the denial of summary judgment based on the defense of immunity is immediately reviewable); *Morse Bros., Inc. v. Webster*, 2001 ME

---

Second, the circumstances of this appeal are not so "extraordinary" as to allow an ad hoc exception to the final judgment rule. *Compare Fitzgerald v. Bilodeau*, 2006 ME 122, ¶ 5, 908 A.2d 1212 (concluding that absent extraordinary circumstances, "an immediate appeal from a denial of a motion to dismiss for *forum non conveniens* under the Uniform Child Custody Jurisdiction and Enforcement Act . . . is inappropriate"), *and IHT Corp. v. Paragon Cutlery Co.*, 2002 ME 68, ¶ 7, 794 A.2d 651 (concluding that the denial of a motion to dismiss for lack of personal jurisdiction does not constitute extraordinary circumstances), *with First Nat'l Bank of Bos. v. City of Lewiston*, 617 A.2d 1029, 1030-31 (Me. 1992) (concluding that "extraordinary circumstances" are present where an appeal is taken from an interlocutory order permitting the sale of property for the benefit of an interest holder but in which the appellant claims to have a senior interest, because "a later finding that the [appellant] was indeed the holder of a senior interest would be hollow"), *and Bar Harbor Banking & Tr. Co. v. Alexander*, 411 A.2d 74, 77 (Me. 1980) (concluding that to avoid "judicial interference with apparently legitimate executive department activity . . . and to safeguard the separation of powers," we will consider an interlocutory appeal); *see also Estate of Dore v. Dore*, 2009 ME 21, ¶ 16, 965 A.2d 862.

6

70, ¶ 15, 772 A.2d 842 (the denial of a special motion to dismiss pursuant to anti-SLAPP legislation is immediately reviewable), *abrogated in part by Nader v. Me. Democratic Party*, 2013 ME 51, ¶ 12 n.9, 66 A.3d 571 (stating the correct standard of review for a special motion to dismiss); *Moffett v. City of Portland*, 400 A.2d 340, 343 n.8 (Me. 1979) (the denial of a motion for a preliminary injunction to enjoin the disclosure of confidential records is immediately appealable).

[¶9]    The determination of whether the death knell exception is applicable to a particular case rests on a fact-specific analysis.    *See Fiber Materials, Inc.*, 2009 ME 71, ¶ 14, 974 A.2d 918.  We must therefore consider whether the MHSA in particular provides Spectrum with substantial rights and, if so, whether those rights will be irreparably lost if the court's order denying the motion to dismiss is not reviewable until a final judgment is entered.

[¶10]  As we have explained, in the mid-1970s the Legislature was faced with "an alleged national crisis in the availability and cost of medical malpractice insurance." *Butler v. Killoran*, 1998 ME 147, ¶ 9, 714 A.2d 129.  As a result, the Legislature enacted the MHSA as "comprehensive tort reform within the health care industry designed to stem rising malpractice insurance

costs and ensure the continued availability of malpractice insurance to Maine health care providers and practitioners." *Id.*

[¶11] Pursuant to the MHSA, a party bringing a claim for medical negligence, in contrast to a conventional tort claim, must comply with a number of distinct procedural requirements. *See* 24 M.R.S. §§ 2853-2858, 2903(1). Most significantly for present purposes, the MHSA requires that, before the claim may be heard by a court, it must be presented to a prelitigation screening panel constituted of a judicial officer, an attorney, and a health care practitioner or provider. *Id.* §§ 2852(2), 2853, 2903(1)(A)-(B). The purpose of the panel proceeding is to allow the panel members to identify and separate meritorious claims from nonmeritorious claims and encourage the parties to achieve an early resolution of the litigation. *Id.* §§ 2851(1), 2854; *see also Sullivan v. Johnson*, 628 A.2d 653, 656 (Me. 1993). Additionally, pursuant to the MHSA, the notice of claim for professional negligence, the proceedings before the panel, and the panel's final determinations are generally confidential.[2]  24 M.R.S. §§ 2853(1-A), 2857.

---

[2] The Legislature has created several narrowly circumscribed exceptions to the confidentiality that otherwise cloaks the proceedings before the panel and the panel's findings. All of those statutory exceptions are limited to public disclosure of that information under certain circumstances during a subsequent court action involving the same claim. *See* 24 M.R.S. § 2857(1) (2018).

[¶12]  Spectrum asserts that it will irretrievably lose the rights and protections provided by the MHSA if it is denied appellate review of an order concluding that the claim is not subject to the MHSA.  We agree.  If a trial court were to erroneously deny a motion to dismiss a claim that the plaintiff has framed as an ordinary tort claim but is actually governed by the MHSA, the defendant would be deprived of "[t]he statutory mechanism for encouraging the settlement, withdrawal or dismissal of claims" for medical negligence. *Sullivan*, 628 A.2d at 656; *cf. Morse Bros., Inc.*, 2001 ME 70, ¶ 15, 772 A.2d 842 (stating that the anti-SLAPP special motion to dismiss is "a statutory creature designed to protect certain defendants from meritless litigation" and that "[p]recluding the moving party from appealing a decision on the motion would result in continued litigation, which is the precise harm that the statute seeks to prevent").

[¶13]  The confidential nature of the pre-suit proceedings for a claim governed by the MHSA is also at stake.  *See* 24 M.R.S. §§ 2853(1-A), 2857.  In other settings, we have concluded that a court order either requiring or allowing for the release of allegedly confidential information is immediately reviewable because the issue is within the purview of the death knell exception. *See Fitch v. Doe*, 2005 ME 39, ¶ 10, 869 A.2d 722 (concluding that an order

compelling the disclosure of an anonymous internet user's identity is immediately reviewable, and stating that the "denial of the opportunity to appeal would make a later appeal moot, because the information at issue would already have been released"); *see also Copp v. Liberty*, 2003 ME 43, ¶ 6 n.2, 818 A.2d 1050; *Moffett*, 400 A.2d at 343 n.8. Because the defendant's right to confidentiality would be irreparably lost if a claim for professional negligence proceeded outside the MSHA framework, the death knell exception to the final judgment rule applies for this reason as well.[3]

[¶14] A conclusion that the death knell exception does not apply in these circumstances would inappropriately minimize the importance of many of the procedures established in the MHSA and the goals promoted by that legislation.[4] Accordingly, we conclude that, pursuant to the death knell

---

[3] Because the allegations in Salerno's complaint are already public, the death knell exception is not available to protect any right of confidentiality Spectrum would have as to that information. *See Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶¶ 10-11, 19, 27, 974 A.2d 918 (dismissing an interlocutory appeal from an order denying the defendant's motion to strike allegedly privileged material from the complaint because "the information that [the defendant] asserts is privileged has already been revealed, and is already part of the record"). Here, however, the confidentiality Spectrum seeks to protect extends to information beyond what Salerno has alleged in her complaint. For example, a motion for summary judgment filed later in the proceeding could reveal considerable factual information to the public—information that would remain confidential if presented in a panel setting.

[4] We note that the substantial rights that would be irreparably lost absent interlocutory review do *not* include the three-year period of limitations applicable to claims for medical negligence—a period that is shorter than for civil claims generally. *Compare* 24 M.R.S. § 2902 (2018) *with* 14 M.R.S. § 752 (2018). As we have held, the denial of a motion to dismiss an action as time-barred is not subject to review on an interlocutory appeal. *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 5, 714 A.2d 826; *see also Tornesello v. Tisdale*, 2008 ME 84, ¶ 18, 948 A.2d 1244. Accordingly, Spectrum's assertion

10

exception, Spectrum's challenge to the court's denial of its motion to dismiss Salerno's complaint is cognizable on this interlocutory appeal.

[¶15] We now turn to the merits of the parties' arguments.

B.     Spectrum's Motion to Dismiss Salerno's Complaint

[¶16] "On a motion to dismiss, facts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. "We examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (alterations omitted) (quotation marks omitted).

[¶17] Spectrum asserts that, although Salerno framed her claim as one for premises liability, her allegations actually constitute an action for professional negligence as that term is defined in the MHSA and thus must be brought pursuant to that Act's provisions. We disagree.

[¶18] The MHSA defines an "[a]ction for professional negligence" as

any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of

that Salerno's claim is barred by the three-year limitation period applicable to claims of professional negligence does not, by itself, allow an interlocutory appeal under the death knell exception.

> contract or otherwise, *arising out of the provision or failure to provide health care services.*

24 M.R.S. § 2502(6) (emphasis added). Although we have described the MHSA as "broadly worded and all-encompassing," *Saunders*, 2006 ME 94, ¶ 9, 902 A.2d 830, and as "fully occupy[ing] the field of claims brought against health care providers," *Brand v. Seider*, 1997 ME 176, ¶ 4, 697 A.2d 846 (quotation marks omitted), the statutory definition of "an action for professional negligence" contains several clear and distinct elements, *see D.S. v. Spurwink Servs., Inc.*, 2013 ME 31, ¶¶ 21, 24, 65 A.3d 1196 (declining to expand the MHSA's definition of "health care provider" against which an action for professional negligence may be brought pursuant to the MHSA). One of those elements is that the claim must "aris[e] out of the provision or failure to provide health care services." 24 M.R.S. § 2502(6).

[¶19] As described in her complaint, Salerno's use of Spectrum's locker room to change clothes after water therapy—without more—simply does not amount to the provision of health care services. Although Salerno was present in the building for purposes of medical rehabilitation, she sustained her injuries because Spectrum was allegedly negligent by allowing a rubber mat to be left in the wrong place in the locker room—a circumstance unrelated to the provision of health care. *See Winona Mem'l Found. of Indianapolis v. Lomax*, 465

N.E.2d 731, 732, 742 (Ind. Ct. App. 1984) (concluding that a claim, brought by a plaintiff who tripped and fell on her way from a dressing room to a physical therapy pool, was properly brought as a premises liability claim, and was not within the purview of that state's Medical Malpractice Act); *Zobac v. Se. Hosp. Dist. of Palm Beach Cty.*, 382 So. 2d 829, 830-31 (Fla. Dist. Ct. App. 1980) (concluding that a claim, brought by a patient alleging that he slipped and fell in water left on the floor of a hospital, was not required to be brought pursuant to the Florida Medical Liability Mediation Act).

[¶20] Consequently, Salerno's claim that she slipped and fell while using Spectrum's locker room is not within the ambit of the MHSA, and the court did not err by denying Spectrum's motion to dismiss her complaint.

The entry is:

Order affirmed.

Jonathan W. Brogan, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellant Spectrum Medical Group, P.A.

Richard R. Regan, Esq., Moncure & Barnicle, Topsham, for appellee Ann Salerno